BRYAN, Judge.
These appeals concern whether the Montgomery Circuit Court erred in reversing a State agency’s decision to allow Affinity Hospital, LLC, d/b/a Trinity Medical Center of Birmingham (“Trinity”), to relocate its hospital. For the reasons explained below, we conclude that the circuit court erred, and we reverse its judgment.

*1025
Procedural History and Factual Background

Trinity owns and operates a hospital located on Montclair Road in Birmingham (“the Montclair campus”) in Jefferson County. In December 2008, Trinity applied with the State Health Planning and Development Agency (“SHPDA”) for a certificate of need (“CON”) to relocate Trinity’s hospital from the Montclair campus to a vacant digital-hospital facility located on Highway 280 in Birmingham (“the Highway 280 site”). See § 22-21-265, Ala.Code 1975 (requiring a CON from SHPDA for new institutional health-service facilities). HealthSouth Corporation began construction on the Highway 280 site in 2002 but later abandoned the project. Brookwood Health Services, Inc., d/b/a Brookwood Medical Center (“Brook-wood”), and St. Vincent’s Health System (“St. Vincent’s”) intervened in opposition to Trinity’s CON application and requested a contested-case hearing. Brookwood owns and operates a hospital located in the City of Homewood, in the Birmingham area, and St. Vincent’s owns and operates a hospital located in Birmingham.
SHPDA appointed an administrative law judge (“the ALJ”) to hear the contested-case hearing. The ALJ held a 21-day hearing, at which he received extensive evidence. In August 2010, the ALJ recommended that SHPDA grant Trinity a CON allowing Trinity to move its hospital from the Montclair campus to the Highway 280 site. In September 2010, SHPDA’s Certificate of Need Review Board (“the CONRB”) voted to adopt the ALJ’s recommendation, and Trinity was granted a CON to relocate its hospital to the Highway 280 site.
Brookwood and St. Vincent’s appealed to the circuit court, pursuant to § 41-22-20, Ala.Code 1975. Before the circuit court, the parties initially disagreed over whether the case should be remanded to SHPDA for the ALJ to consider certain evidence; this court answered that question in the negative in Ex parte Affinity Hospital, LLC, 85 So.3d 1033 (Ala.Civ.App.2011). Following our decision in that case, the circuit court held a hearing on the merits of the appeal in May 2012. In July 2012, the circuit court entered a judgment reversing SHPDA’s decision permitting Trinity to move to the Highway 280 site. Trinity and SHPDA timely appealed to this court, and we consolidated the appeals. Trinity filed a motion to expedite the appeals, which we granted. This court heard oral arguments on October 23, 2012.

Standard of Review

This court reviews a circuit court’s judgment as to an agency’s decision without a presumption of correctness because the circuit court is in no better position to review the agency’s decision than is this court. Clark v. Fancher, 662 So.2d 258, 261 (Ala.Civ.App.1994). In reviewing an agency’s decision, this court’s standard of review is the same as that of the circuit court. Alabama Dep’t of Envtl. Mgmt. v. Legal Envtl. Assistance Found., Inc., 973 So.2d 369, 375 (Ala.Civ.App.2007). Section 41-22-20(k), Ala.Code 1975, governs our review and the circuit court’s review of SHPDA’s decision in this case. In pertinent part, it provides:
“(k) Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.... The court may reverse or modify the decision or grant other appropriate relief from the agency action ... if the court finds that the agency action is due to be set aside or modified under standards set forth in *1026 appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“(1) In violation of constitutional or statutory provisions;
“(2) In excess of the statutory authority of the agency;
“(3) In violation of any pertinent agency rule;
“(4) Made upon unlawful procedure;
“(5) Affected by other error of law;
“(6) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”
Our review of SHPDA’s conclusions of law and its application of the law to the facts is de novo. Ex parte Wilbanks Health Care Servs., Inc., 986 So.2d 422, 425 (Ala.2007).

Discussion

The circuit court presented various reasons for reversing SHPDA’s decision to grant Trinity the CON permitting it to move to the Highway 280 site. We will address those reasons in turn.
I.

“The 60% Occupancy Rule”

The State Health Plan is a comprehensive plan that “provide[s] for the development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, at reasonable costs, for all residents of the state.” § 22-21-260(13), Ala.Code 1975. The circuit court determined that Trinity’s CON application did not comply with a particular rule found in the State Health Plan, Rule 410-2-4-.14(3)(b), Ala. Admin. Code (SHPDA), also known as “the 60% occupancy rule.” The 60% occupancy rule provides:
“(b) For replacement of hospitals, the occupancy rate for the most recent annual reporting period should have been at least 60 percent. If this occupancy level was not met, the hospital should agree to a reduction in bed capacity that will increase its occupancy rate to 60 percent. For example, if a 90-bed hospital had an average daily census (ADC) of 45 patients, its occupancy rate was 50 percent. (The ADC of 45 patients divided by 90 beds equals 50 percent). To determine a new bed capacity that would increase the hospital’s occupancy rate to 60 percent, simply divide the ADC of 45 patients by .60 (A fraction of a bed should be rounded upward to the next whole bed) The hospital’s new capacity should be 75 beds, a 15 bed reduction to its original capacity of 90 beds.”
(Emphasis added.)
SHPDA found that Trinity’s hospital at the Montclair campus has 560 beds but that Trinity’s average daily census, i.e., the average number of beds occupied by patients daily, is only 222.7, which rounds up to 223. Therefore, Trinity’s current occupancy rate is 39.8% (223 beds -r- 560 beds = 39.8%), less than 60%. In its CON application, Trinity sought to relocate 398 of its 560 beds to the Highway 280 site. Using the average daily census of 223, the occupancy rate for a 398-bed hospital would be only 56% (223 beds 398 beds = 56%), less than the 60% occupancy standard. Thus, SHPDA found that Trinity’s application, in applying for 398 beds, did not meet the 60% occupancy standard. However, instead of denying Trinity’s CON application, SHPDA took a flexible approach in dealing with this shortcoming.
*1027 So that the 60% occupancy rule would be satisfied, SHPDA awarded Trinity the CON “subject to the stipulation that the number of acute care beds be further reduced by another twenty-six (26) beds.” That is, SHPDA granted the CON for 872 beds instead of the 398 beds for which Trinity had applied (898 beds — 26 beds = 372 beds). Given that Trinity has an average daily census of 223, a hospital with 372 beds would meet the 60% occupancy rule (using the formula in the rule, 223 h- .6 = 371.7, which rounds up to 372).
The circuit court, however, rejected SHPDA’s solution. The circuit court characterized the condition imposed by SHPDA, reducing the number of requested beds by 26 beds, as an impermissible attempt to “cure” Trinity’s CON application, which SHPDA had determined to be noncompliant on its face with the 60% occupancy standard. The circuit court essentially determined that Trinity was bound by its proposal to relocate 398 beds. Because the number of proposed beds, 398, did not satisfy the 60% occupancy standard, the circuit court concluded that Trinity simply had not satisfied the 60% occupancy rule. The circuit court therefore concluded that SHPDA had violated § 22-21-266(1), Ala.Code 1975, which permits SHPDA to issue a CON for new inpatient facilities only if the “proposed facility or service is consistent” with “the appropriate state plan,” ie., the State Health Plan, which includes the 60% occupancy rule. The circuit court also found that SHPDA had violated its own rules reflecting the requirement found in § 22-21-266(1). See Rule 410-l-6-.02(l)(a), Ala. Admin. Code (SHPDA) (stating that the “proposed new institutional health service shall be consistent with” the State Health Plan); and Rule 410-1-6-.18, Ala. Admin. Code (SHPDA) (mirroring the language in § 22-21-266(1)). Under the circuit court’s reasoning, the number of proposed beds could not be reduced from 398 to 372 unless Trinity withdrew its application and submitted another application to SHPDA requesting the lower number. Brookwood and St. Vincent’s agree with the circuit court. Trinity and SHPDA disagree with the circuit court, arguing that the circuit court erred and that SHPDA correctly applied the 60% occupancy rule.
As Trinity and SHPDA correctly note, the 60% occupancy rule itself contemplates the procedure used in this case. The rule provides that “[i]f [the 60%] occupancy level [for the most recent annual reporting period] was not met, the hospital should agree to a reduction in bed capacity that will increase its occupancy rate to 60 percent.” That procedure occurred in this case. Before the ALJ, the parties disagreed over Trinity’s average daily census, the variable that determines the number of beds that Trinity could move. Trinity presented evidence in support of a relatively higher average daily census that would have supported moving 398 beds. However, Brookwood and St. Vincent’s argued that Trinity’s average daily census was lower, the ALJ selected that lower number based on the evidence before him, and SHPDA adopted that finding. Because that factual finding of a lower number would support moving only 372 beds, SHPDA then conditioned Trinity’s CON on a 26-bed reduction to satisfy the 60% occupancy standard, precisely as the rule contemplates.
Brookwood and St. Vincent’s argue that the 60% occupancy rule does not apply to this case because Trinity never “agreed” to a reduction from 398 proposed beds to 372 beds. It is true that Trinity opposed the 26-bed reduction during the earlier stages of this case. When the ALJ recommended that Trinity be allowed to move 372 beds instead of 398 beds, Trinity filed *1028 an exception to the ALJ’s recommendation, objecting to an allowance of fewer than 398 beds. However, after SHPDA adopted the ALJ’s recommendation, Trinity did not cross-appeal the reduction in beds when Brookwood and St. Vincent’s appealed the decision to grant Trinity the CON. Thus, Trinity “agreed” to the reduction by acquiescing to SHPDA’s decision. Indeed, this case would not have proceeded to this point but for Trinity’s agreeing to the reduction. We further note that the rule does not specify when an applicant must agree to a reduction in beds.
This case illustrates the necessity of applying the 60% occupancy rule as SHPDA did. As in this case, parties may disagree on a hospital’s average daily census, the number that will determine how many beds a hospital may move in cases like this one. In such cases, the ALJ must determine the average daily census to determine how many beds may be moved under the rule. After such a determination is made, the number of requested beds should be reduced to meet the 60% occupancy standard, if necessary. “ ‘This court and the [circuit] court must give substantial deference to an agency’s interpretation of its rules and regulations. “[A]n agency’s interpretation of its own regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.” ’ ” Fowler v. Johnson, 961 So.2d 122, 130 (Ala.2006) (quoting Mobile Cnty. Pers. Bd. v. Tillman, 751 So.2d 517, 518 (Ala.Civ.App.1999)). SHPDA’s application of the 60% occupancy rule in this case is reasonable. The circuit court’s rigid interpretation of the rule would hamstring SHPDA’s ability to permit the relocation of hospitals. Under that interpretation, if the proposed number of beds to be moved is determined to be even one number too high the applicant would have to abandon the application and start the process again after the evi-dentiary hearing. Such a draconian approach would undermine our legislature’s stated need for “efficient, economical and effective government administration” in administrative procedures. § 41-22-2(b), Ala.Code 1975.

II.

Evidential~y Matters

A.

Whether the Evidence Submitted Applies to a 372-Bed, Hospital

In addition to determining that Trinity’s CON application did not comply with the 60% occupancy rule, the circuit court also determined that Trinity had presented evidence only as to a proposed 398-bed hospital, not a 372-bed hospital. The circuit court explained:
“An applicant bears the burden of producing evidence demonstrating that its CON application complies with all of the applicable CON review criteria. [Rule 410 — 1—6—.01(1), Ala. Admin. Code (SHPDA).] ... Trinity introduced volumes of evidence in support of its proposal to relocate 398 beds, but it introduced no evidence of any kind regarding a 372-bed hospital. Trinity introduced no evidence of the cost of a 372-bed project, no utilization and financial projections for a 372-bed project, and no architectural drawing for a 372-bed project. ... By approving Trinity to relocate 372 beds despite the lack of any evidence regarding the cost, design, financial feasibility, or bed complement of a 372-bed project, SHPDA failed to follow its own regulations requiring an applicant to demonstrate compliance with all of the applicable CON review criteria. [Rule] 410 — 1—6—.01(1).”
SHPDA issued Trinity a CON to move 372 beds, not the 398 beds that *1029 Trinity had sought and had presented evidence concerning. In issuing Trinity a CON to move only 372 beds, SHPDA found that the evidence supported such a move, evidently finding that the 26-bed reduction is an immaterial change that did not require the presentation of additional evidence. Regarding this factual issue, SHPDA’s decision “shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence.” § 41-22-20(k). “‘This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.’ ” Colonial Mgmt. Group, L.P. v. State Health Planning & Dev. Agency, 853 So.2d 972, 975 (Ala.Civ.App.2002) (quoting Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala.Civ.App.1989)). Regarding factual matters, a circuit court may reverse SHPDA’s decision if the decision is “[cjlearly erroneous in view of the reliable, probative, and substantial evidence of the whole record” or is “[ujnrea-sonable, arbitrary, or capricious.” § 41-22-20(k)(6) and (7). Moreover, considering SHPDA’s recognized expertise in this specialized area, the weight and significance of any given piece of evidence presented in a CON-application case is left primarily to SHPDA’s discretion. Colonial Mgmt. Group, 853 So.2d at 975.
In this case, SHPDA did not err in implicitly finding that a reduction from 398 beds to 372 beds is an immaterial change in evaluating whether the CON should be granted. That change would not affect Trinity’s acquisition cost of the Highway 280 site. At the hearing, Trinity presented projections regarding revenue and expenses for the Highway 280 site based on a maximum of only 300 occupied beds. Thus, those projections would not change due to a reduction from 398 proposed beds to 372 proposed beds. Given the deference due SHPDA as to factual matters and SHPDA’s expertise in this area, the circuit court erred insofar as it reversed SHPDA’s decision on this issue.

B.

Evidence Regarding the Type of Hospital Beds Reduced

In reversing SHPDA’s decision, the circuit court also determined that “[tjhere is not even any evidence in the record [on appeal] as to what type of hospital beds will make up the 372 beds for which Trinity is approved.” However, that determination is unsupported by the record. In applying for 398 beds, Trinity sought 317 “acute care” beds, 64 psychiatric beds, and 17 inpatient-rehabilitation beds (317 + 64 + 17 = 398). The CONRB awarded Trinity the CON “subject to the stipulation that the number of acute care beds be further reduced by another twenty-six (26) beds.” (Emphasis added.) Brookwood and St. Vincent’s make a somewhat hyper-technical argument that all beds in a hospital are “acute care” beds because a hospital is an “acute care” facility; therefore, they say, it is unclear what type of bed was actually reduced by 26 beds. Trinity acknowledges that, generally, all beds in a hospital may be referred to as “acute care” beds because they are located in an “acute care” facility. However, as Trinity notes, the State Health Plan makes distinctions between “general acute care beds,” psychiatric beds, and inpatient-rehabilitation beds. See Rules 410-2-4-.02, -.08, -.10 Ala. Admin. Code (SHPDA)(establishing different need methodologies and planning areas for the three types of beds). We conclude that the 26 reduced beds are obviously general acute-care beds as opposed to psychiatric beds or inpatient-rehabilitation beds.

*1030
c.

Ex Parte Shelby Medical Center

The circuit court also reversed the decision to grant Trinity a CON because, the circuit court determined, the decision “is in direct conflict with” Ex parte Shelby Medical Center, Inc., 564 So.2d 63 (Ala.1990). In Ex parte Shelby Medical Center, the Lloyd Noland Foundation applied for a CON to construct a hospital in the River-chase area of southern Jefferson and northern Shelby Counties. 564 So.2d at 65. Lloyd Noland already had a hospital in the area; Lloyd Noland planned to relocate a certain number of beds from that hospital to the proposed new hospital while also keeping the older hospital open. Id. at 69. In 1986, SHPDA granted the CON for the new hospital after holding a one-day hearing. Id. at 65. Unlike in this case, SHPDA did not make any findings of fact other than tracking the requirements established in § 22-21-266, Ala.Code 1975. Id. at 70. After a series of appeals, our supreme court determined that SHPDA had erred in granting the CON. The supreme court concluded, among other things, that there was insufficient evidence to establish each of the five requirements for new inpatient facilities or services found in § 22 — 21—266(1)—(5). Relying on Ex parte Shelby Medical Center, the circuit court in this case concluded that there was insufficient evidence to establish three of the requirements of § 22-21-266, i.e., § 22-21-266(1), (3), and (5). We will discuss each of these requirements in light of Ex parte Shelby Medical Center and the facts of this case.
Initially, we note that, although there are some factual similarities between this case and Ex parte Shelby Medical Center, there are also substantial differences. Cases concerning CON applications are fact-intensive, and it is very unlikely that two cases will ever have the same facts. It is SHPDA’s responsibility to weigh the evidence in each case, and SHPDA is afforded much deference in making its factual findings. Neither this court nor the circuit court may “substitute its judgment for that of [SHPDA] as to the weight of the evidence on questions of fact.” § 41-22-20(k).

1.

§ 22-21-266(1)

As noted earlier, § 22-21-266(1) permits SHPDA to issue a CON for new inpatient facilities only if the “proposed facility or service is consistent” with the State Health Plan. In Ex parte Shelby Medical Center, the supreme court observed that “the [State Health Plan] is designed to allocate health care resources in such a way that health care services are available and accessible at reasonable costs.” 564 So.2d at 69. The supreme court then determined that “[c]onstructing a new $26,270,000 hospital in an overbed-ded area, relocating currently unstaffed beds into the new hospital, and providing duplicative services in the new hospital do not promote the [State Health Plan’s] goal of cost containment.” Id. Thus, the supreme court determined that SHPDA’s decision to grant the CON to Lloyd Noland was inconsistent with the State Health Plan and, therefore, violated § 22-21-266(1). In this case, the circuit court found Ex parte Shelby Medical Center to be directly on point.
However, the pertinent facts in this case are distinguishable from those in Ex parte Shelby Medical Center. It is true that Jefferson County is currently “overbed-ded,” i.e., there are more hospital beds in the county than needed, as was the case in Ex parte Shelby Medical Center. However, the proposed move by Trinity to the Highway 280 site would substantially reduce the number of Trinity’s beds. Trinity currently has 560 beds, but it would be allowed to move only 372 beds, which would reduce the number of beds in Jef *1031 ferson County by 188. Thus, unlike in Ex parte Shelby Medical Center, the proposed relocation in this case would actually alleviate overbedding. Furthermore, unlike in Ex parte Shelby Medical Center, Trinity is seeking to relocate its entire hospital, not divide its beds between two hospitals. The relocation would not provide duplica-tive services because all of Trinity’s services would be provided at the Highway 280 site. For these reasons, Ex parte Shelby Medical Center does not establish that relocating Trinity’s hospital would fail to promote the goal of cost containment found in the State Health Plan. Thus, we conclude that the circuit court erred in determining that Ex parte Shelby Medical Center dictates the conclusion that the proposed facility is inconsistent with the State Health Plan.

2.

§ 22-21-266(3)

Section 22-21-266(3) permits SHPDA to issue a CON for new inpatient facilities only if “existing inpatient facilities providing inpatient services similar to those proposed are being used in an appropriate and efficient manner consistent with community demands for services.” In Ex parte Shelby Medical Center, our supreme court determined that this requirement was not met. The court based its determination on the fact that, “while the population in the proposed service area is increasing, the occupancy rates for surrounding hospitals are falling.” 564 So.2d at 69. In this case, the circuit court found the reasoning of the supreme court to be controlling on this issue. The circuit court noted that hospitals in Jefferson County continue to have a low occupancy rate and that the “low occupancy rates, combined with difficult economic conditions and the relatively low reimbursement rates available in Alabama, have created an extremely difficult operating environment for Jefferson County hospitals.” Citing Ex parte Shelby Medical Center, the circuit court concluded that “there is no way that SHPDA can make a finding that existing Jefferson County hospitals are being ‘used in an appropriate and efficient manner,’ as required by § 22-21-266(3).”
However, this case contains evidence that was not present in Ex parte Shelby Medical Center. As Trinity notes, the circuit court’s judgment did not discuss certain evidence indicating that Brookwood and St. Vincent’s are being used in an appropriate and efficient manner. The record indicates that Brookwood treats nearly 40,000 patients annually in its emergency department, has experienced growth in its orthopedics services and some specialty services, has the most active surgical volumes in Alabama, and is Alabama’s largest outpatient provider. The record also contains evidence indicating that St. Vincent’s has experienced significant growth in its primary-care services and surgical services, recently sought a CON for additional acute-care beds due to high occupancy rates, and has stated the need for additional critical-care beds to meet demand. Furthermore, as the circuit court acknowledged in its judgment, SHPDA found that “Jefferson County has a world-class health system” and that “people come to Jefferson County for health care from all over the state, the southeast, and the world,” findings that do not appear to be disputed.
We emphasize again that the circuit court may not “substitute its judgment for that of [SHPDA] as to the weight of the evidence on questions of fact.” § 41-22-20(k). In this case, there was substantial evidence supporting SHPDA’s finding that existing hospitals in Jefferson County are being “used in an appropriate and efficient manner,” as required by § 22-21-266(3). Viewing SHPDA’s finding through the prism of our deferential standard of re *1032 view, that finding was not “[cjlearly erroneous in view of the reliable, probative, and substantial evidence of the whole record” or “[u]nreasonable, arbitrary, or capricious.” § 41-22-20(k)(6) and (7).

3.

§ 22-21-266(5)

Section 22-21-266(5) provides yet another requirement that must be satisfied in this case. Under that provision, SHPDA must find “[t]hat patients will experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service.” In Ex parte Shelby Medical Center, the supreme court concluded that this requirement had not been satisfied. The supreme court noted, among other things, that the services to be offered by Lloyd Noland’s proposed hospital “would duplicate those offered by existing facilities in the area.” 564 So.2d at 70. The circuit court found the same to be true in this case, noting that there are 7 hospitals located within 10 miles of the Highway 280 site in Birmingham. The circuit court also noted the ready availability of high-quality healthcare services in Jefferson County. Thus, the circuit court determined that SHPDA erred by finding that patients will experience serious problems in obtaining needed health care if Trinity is not allowed to relocate.
Although there are similarities between the cases, this case presents facts that were not evident in Ex parte Shelby Medical Center. In short, the area where Trinity seeks to relocate, the Highway 280 corridor, presents a unique situation. For one, there is no dispute that Highway 280 experiences chronic traffic congestion. That congestion affects the time needed to transport patients in need of emergency treatment from the Highway 280 area to local hospitals located to the north of the Highway 280 site, including the Montclair campus. Ivor Brooks, Birmingham’s fire chief, testified that there was a “great need” for a hospital in the Highway 280 area, which he described as having experienced a “population explosion.” Brooks explained that having a hospital at the Highway 280 site would decrease travel time and increase the chances of survival in cases requiring emergency-room treatment. Similarly, more than 60 paramedics and fire-and-rescue personnel submitted letters supporting Trinity’s proposed move to the Highway 280 site. Also, there is no hospital located on Highway 280 in the extensive area between Brookwood’s hospital and Sylacauga, located south of Birmingham; Trinity seeks to relocate in that area, away from the cluster of hospitals to the north.
In its decision, SHPDA summarized the unique need for a hospital at the Highway 280 site:
“In the absence of this [proposed] facility, patients in southern Jefferson and northern Shelby counties, as well as certain patients to the north, south and west of Trinity’s existing campus, will experience serious problems in obtaining needed healthcare. The proposed relocation would improve access to, and availability of, emergency room services for patients in the region by making Trinity more accessible for all patients due to the hospital’s proximity to all of the area’s major roadways, as well as to those underserved patients residing in the immediate area around the Highway 280 site and further [south] down the Highway 280 corridor.”
Considering the deference due SHPDA’s findings of fact, see § 41-22-20(k), we conclude that SHPDA did not err in finding that patients will experience serious problems in obtaining needed health care if Trinity is not allowed to move its hospital. Ex parte Shelby Medical Center is distinguishable and is not controlling on this point.

*1033
Conclusion

The circuit court erred in reversing SHPDA’s decision to permit Trinity to relocate its hospital to the Highway 280 site. We reverse the circuit court’s judgment, and we remand the case for the entry of a judgment in favor of Trinity.
2111014 — REVERSED AND REMANDED.
2111015 — REVERSED AND REMANDED.
2111062 — REVERSED AND REMANDED.
2111063 — REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.