**Ex parte HEALTHSOUTH OF ALABAMA, LLC.**

**(In re HealthSouth of Alabama, LLC**

**v.**

**SHELBY RIDGE ACQUISITION CORPORATION d/b/a Shelby Ridge Rehabilitation Hospital).**

**Ex parte Alabama State Health Planning and Development Agency.**

**(In re Alabama State Health Planning and Development Agency**

**v.**

**Shelby Ridge Acquisition Corporation d/b/a Shelby Ridge Rehabilitation Hospital).**

**1141042 and 1141043.**

Supreme Court of Alabama.

April 1, 2016.

Marc James Ayers and Jennifer H. Clark of Bradley Arant Boult Cummings LLP, Birmingham; and Colin H. Luke and Kristen A. Larremore of Waller Lansden Dortch & Davis LLP, Birmingham, for petitioner HealthSouth of Alabama, LLC.

Mark D. Wilkerson and Dana H. Billingsley of Wilkerson & Bryan, P.C., Montgomery, for petitioner Alabama State Health Planning & Development Agency.

Matthew McDonald of Jones Walker, LLP, Mobile; Lorre J. Skelton, Birmingham; Thomas G. Mancuso, Montgomery; Robert C. Lockwood of Wilmer & Lee, P.A., Athens, for respondent Shelby Ridge Acquisition Corporation d/b/a Shelby Ridge Rehabilitation Hospital.

Frank C. Ellis of Ellis, Head, Owens & Justice, Columbiana, for amici curiae Shelby County Commission and Shelby County Manager Alex Dudchock in support of the petitioners.

BRYAN, Justice.

The Alabama State Health Planning and Development Agency ("SHPDA") granted HealthSouth of Alabama, LLC ("HealthSouth"), a certificate of need ("CON") allowing HealthSouth to operate 17 inpatient physical-rehabilitation beds in Shelby County. In a separate proceeding, SHPDA granted another CON to HealthSouth allowing it to operate an additional 17 inpatient physical-rehabilitation beds in Shelby County. HealthSouth intended to use the two CONs to build and operate a 34–bed inpatient physical-rehabilitation hospital. Shelby Ridge Acquisition Corporation d/b/a Shelby Ridge Rehabilitation Hospital ("Shelby Ridge") opposed HealthSouth's CON applications, and, after SHPDA issued the CONs to HealthSouth, Shelby Ridge appealed SHPDA's decision to the Montgomery Circuit Court. The circuit court reversed one of SHPDA's decisions but affirmed the other. HealthSouth, SHPDA, and Shelby Ridge appealed separately to the Court of Civil Appeals, which consolidated the appeals and concluded that SHPDA had erred by granting the CONs to HealthSouth. *HealthSouth of Alabama, LLC v. Shelby Ridge Acquisition Corp.*, 207 So.3d 14 (Ala.Civ.App.2015). HealthSouth and SHPDA separately petitioned this Court for certiorari review, which we granted. We have consolidated these appeals for the purpose of issuing one opinion.

While the appeals were pending before us, the parties resolved their disputes; the

parties now all agree that HealthSouth should be allowed to build the planned 34–bed physical-rehabilitation hospital in Shelby County. The parties now all agree that the Court of Civil Appeals wrongly decided the appeals before it insofar as Health-South's CON applications are concerned. Shelby Ridge and SHPDA accept the statement in HealthSouth's brief asserting:

"The Court of Civil Appeals ... incorrectly held that [SHPDA] had no sufficient evidence before it from which it could have determined that the separate HealthSouth CONs were each 'financially feasible' or provided for sufficient clinical 'depth of specialization'—although those are only two of many subjective considerations that [SHPDA] weighs and balances in making its determination.... As reflected in [Presiding] Judge Thompson's dissent[,] which acknowledged the highly unique circumstances surrounding this case[,] ... this holding is directly contrary to long-established Alabama decisions holding that fact-finding and factor-weighing is uniquely the province of [SHPDA], and that such determinations are entitled to substantial deference.

"In particular, the Court of Civil Appeals overtook the role of [SHPDA] (or the Legislature) in declaring these two considerations to be 'key' or determinative in every CON case, when the governing statutes and regulations give them no such superpriority. To the contrary, under the governing law these are simply two of many factors, subfactors and considerations that [SHPDA] balances in making its decision."

HealthSouth's brief, at 3–4 (footnote omitted).

We agree with the parties that the Court of Civil Appeals erred. A detailed recitation of that court's analysis is unnecessary. It is sufficient to note that the pivotal error of that court's opinion is the characterization as "key" and determinative two of the many considerations to be evaluated and balanced by SHPDA in considering CON applications. Specifically, the Court of Civil Appeals isolated and prioritized the "financial feasibility" statutory subfactor and a concern for clinical "depth of specialization," which is not actually an enumerated statutory factor or subfactor but may be a legitimate consideration for SHPDA. The Court of Civil Appeals then determined that there was insufficient evidence of those two considerations and, based on that determination, concluded that SHPDA had erred. In doing so, the Court of Civil Appeals usurped SHPDA's role. There is no statute or SHPDA regulation that makes those two considerations "key" or determinative in every proceeding on a CON application. It is the proper role of SHPDA, not a reviewing court, to weigh those factors and others in determining whether to grant a CON.

Section 22–21–266, Ala.Code 1975, establishes findings SHPDA *must* make to grant a CON in cases like this one. Neither of the considerations prioritized by the Court of Civil Appeals is a required finding under § 22–21–266, which provides:

"No certificate of need for new inpatient facilities or services shall be issued unless the SHPDA makes each of the following findings:

"(1) That the proposed facility or service is consistent with the latest approved revision of the appropriate state plan effective at the time the application was received by the state agency;

"(2) That less costly, more efficient or more appropriate alternatives to such inpatient service are not available, and that the development of such

alternatives has been studied and found not practicable;

"(3) That existing inpatient facilities providing inpatient services similar to those proposed are being used in an appropriate and efficient manner consistent with community demands for services;

"(4) That in the case of new construction, alternatives to new construction (e.g., modernization and sharing arrangement) have been considered and have been implemented to the maximum extent practicable; and

"(5) That patients will experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service."

It is undisputed that SHPDA made these required findings in issuing the CONs to HealthSouth. The Court of Civil Appeals did not determine that these required findings were not made.

Section 22–21–264, Ala.Code 1975, establishes eight *nonexclusive* factors SHPDA must consider, *i.e.,* SHPDA may consider other factors, in making its findings. The fourth factor is a "[d]etermination of a substantially unmet public requirement for the proposed health care facility ... that is consistent with orderly planning within the state and the community for furnishing comprehensive health care, such determination to be established ... *after giving appropriate consideration to*" eight subfactors, one of which is"[f]inancial feasibility." § 22–21–264(4)a. (emphasis added). But "financial feasibility" is one of only eight subfactors SHPDA must balance and "giv[e] appropriate consideration to" in considering whether there is a "substantially unmet public requirement" for the services proposed by the CON application. Further, a concern for "depth of specialization" is not an enumerated factor or subfactor, but it may be a valid consideration

cited by SHPDA given that the factors enumerated in § 22–21–264 are nonexclusive.

In short, neither "financial feasibility" nor a concern for "depth of specialization" is a determinative factor in a proceeding on a CON application. SHPDA is charged with weighing the various factors and subfactors (such as financial feasibility) in a particular case; it is SHPDA, not a reviewing court, that must use its expertise and discretion to prioritize the relevant considerations. As the Court of Civil Appeals has noted:

"Cases concerning CON applications are fact-intensive, and it is very unlikely that two cases will ever have the same facts. It is SHPDA's responsibility to weigh the evidence in each case, and SHPDA is afforded much deference in making its factual findings. Neither this court nor the circuit court may 'substitute its judgment for that of [SHPDA] as to the weight of the evidence on questions of fact.' "

*Affinity Hosp., LLC v. St. Vincent's Health Sys.,* 129 So.3d 1022, 1030 (Ala.Civ. App.2012).

We also agree with Presiding Judge Thompson's observations regarding these appeals:

" '[I] ... reiterate that the circuit court "was in no better position to review [SHPDA's] decision than this court," that "[t]he weight or importance assigned to any given piece of evidence presented in a CON application is left primarily to [SHPDA's] discretion, in light of [SHPDA's] recognized expertise in dealing with these specialized areas," that a reviewing court is not to "substitute its judgment for that of the administrative agency," and that that principle applies "even in cases where the testimony is generalized, the evidence is

meager, and reasonable minds might differ as to the correct result." *Colonial [Mgmt. Grp., L.P. v. State Health Planning & Dev. Agency ]*, 853 So.2d [972] at 974, 975 [ (Ala.Civ.App. 2002) ].'

"*Ace Home Health Care, LLC v. Gentiva Health Servs., Inc.,* 162 So.3d 931, 939 (Ala.Civ.App.2014).

"The circumstances presented in this case are rare if not completely unique....

"Because of the especially complex circumstances in this case, I would defer to the expertise of SHPDA and to the decisions it made regarding the granting or denial of the CONs. Therefore, I believe that the circuit court should have affirmed each of SHPDA's decisions relating to the granting or denial of the CONs at issue, and I would affirm or reverse the circuit court's judgments accordingly."

*HealthSouth,* 207 So.3d at 38–39 (Thompson, P.J., dissenting).

Based on the foregoing, we reverse the judgment of the Court of Civil Appeals and render a judgment in favor of HealthSouth and SHPDA. We also remand the cases to the Court of Civil Appeals with instructions that that court remand the cases to the circuit court so the parties may implement the resolution they have reached.

1141042—REVERSED AND JUDGMENT RENDERED AND CASE REMANDED WITH INSTRUCTIONS.

1141043—REVERSED AND JUDGMENT RENDERED AND CASE REMANDED WITH INSTRUCTIONS.

STUART, BOLIN, PARKER, MAIN, and WISE, JJ., concur.

MOORE, C.J., concurs in the result.

MURDOCK and SHAW, JJ., dissent.

SHAW, Justice (dissenting).

I respectfully dissent.

HealthSouth of Alabama, LLC ("HealthSouth"), was issued two certificates of need ("CONs") by the Certificate of Need Review Board ("CONRB"), each CON for a 17–bed inpatient physical-rehabilitation hospital. Although the Court of Civil Appeals' opinion states that operating a facility with only 17 inpatient physical-rehabilitation beds was neither financially nor clinically feasible and describes those criteria as "key," I do not believe the Court of Civil Appeals impermissibly elevated those criteria over any others. They were "key" because the decisions to grant the CONs to HealthSouth were clearly erroneous in light of these undisputed facts. According to the Court of Civil Appeals, in the SHP–adjustment–beds–CON matter, HealthSouth's own witnesses testified that a freestanding 17–bed hospital was inappropriate:

"In adopting the ALJ [Administrative Law Judge]'s recommended order regarding the SHP-adjustment beds, *the CONRB adopted the ALJ's findings of fact as evidentiary support for its decision.* The evidence before the ALJ showed that the operation of a facility with only 17 inpatient physical-rehabilitation beds was not only *cost-prohibitive but also would not provide a sufficient number of patients to adequately assess the services being provided.* HealthSouth's president of the Southeast Region testified that '[a freestanding 17–bed hospital is] *not critical mass enough to provide good clinical outcomes,* and then it's also just too *small from a financial perspective. You can't treat enough patients to support a freestanding building at 17 beds.'* The medical director and physiatrist at HealthSouth's Lakeshore location testified be-

fore the ALJ as follows under questioning from HealthSouth's counsel:

> " 'Q. Is a 17–bed hospital sufficient clinically for Shelby County?
>
> " 'A. Well, it isn't just based on population; but there are also—if you look at freestanding hospitals in the U.S. there,—*there aren't 17–bed freestanding hospitals because a 17–bed hospital cannot provide the depth of specialization that is needed to serve the variety of rehab patients that are typically seen in a rehab hospital.*'

"No evidence was presented before the ALJ or the CONRB that contradicts the testimony of those witnesses."

*HealthSouth of Alabama, LLC v. Shelby Ridge Acquisition Corp.,* 207 So.3d 14, 26–27 (Ala.Civ.App.2015) (emphasis added).

The CONRB adopted the following findings of the ALJ as its own: "[A] 17–bed, inpatient, physical-rehabilitation hospital 'is not financially viable in and of itself.' ... '[A] seventeen (17)-bed freestanding inpatient rehabilitation hospital is not large enough, would not have the capacity to treat enough patients to develop a great deal of expertise, and would not have enough critical mass to provide good clinical outcomes.' " *HealthSouth,* 207 So.3d at 27. This finding was based on HealthSouth's own evidence. As noted by the main opinion, these are "valid" and "legitimate" considerations. What other factors in Ala.Code 1975, § 22–21–264(4), outweighed these glaring deficiencies in a 17–bed facility?

Of course, HealthSouth anticipated that it would be operating a 34–bed facility, not a 17–bed facility. "All" the evidence in the relocation-bed-CON matter supported building a 34–bed facility, which was the "minimum" number of beds required. *HealthSouth,* 207 So.3d at 19. But there was no application for a CON for a 34–bed

facility. There were CON applications for 2 17–bed facilities, neither of which, standing alone, the undisputed evidence would support. The reality might be that a 34–bed facility will be built and that Health-South can cobble together enough CONs to fill it. However, the Court of Civil Appeals addressed this as follows:

"If we were to take the view that the CONRB's approval of HealthSouth's application for the relocation-bed CON somehow cured the evidentiary defects in the prior approval of the SHP-adjustment-bed CON, we would be construing the applications as if the proposal all along had been to build a 34–bed facility containing the 17 Carraway beds and the 17 SHP-adjustment beds. However, at the time the first CON application, which sought authorization to relocate the Carraway beds, was submitted, [the Statewide Health Coordinating Council] had not yet adjusted the SHP to add the 17 beds to Shelby County. Therefore, conflating the CON applications would be in violation of the statutory prohibition against inconsistency with the SHP.... We can find no statutory or regulatory authority that would permit us to consider subsequent events when evaluating CONRB's decisions regarding these separate CON applications...."

*HealthSouth of Alabama, LLC v. Shelby Ridge Acquisition Corp.,* 207 So.3d at 32.

I would affirm the decision of the Court of Civil Appeals; therefore, I dissent.

MURDOCK, J., concurs.