HEALTHSOUTH OF ALABAMA, LLC

v.

SHELBY RIDGE ACQUISITION COR-
PORATION d/b/a Shelby Ridge Re-
habilitation Hospital.

Alabama State Health Planning
and Development Agency

v.

Shelby Ridge Acquisition Corporation
d/b/a Shelby Ridge Rehabilitation
Hospital.

Shelby Ridge Acquisition Corporation
d/b/a Shelby Ridge Rehabilitation
Hospital

v.

HealthSouth of Alabama, LLC, and
Alabama State Health Planning
and Development Agency.

Shelby Ridge Acquisition Corporation
d/b/a Shelby Ridge Rehabilitation
Hospital

v.

HealthSouth of Alabama, LLC, and
Alabama State Health Planning
and Development Agency.

2120872, 2120907, 2130515, and 2130628.

Court of Civil Appeals of Alabama.

June 12, 2015.

Marc James Ayers and Jennifer H. Clark of Bradley Arant Boult Cummings LLP, Birmingham; James A. Byram, Jr., of Balch & Bingham LLP, Montgomery; Robert D. Segall of Copeland, Franco, Screws & Gill, P.A., Montgomery; and Colin H. Luke and Kristen A. Larremore of Waller Lansden Dortch & Davis, LLP, Birmingham, for HealthSouth of Alabama, LLC.

Mark D. Wilkerson and Dana H. Billingsley of Wilkerson & Bryan, P.C., Montgomery, for Alabama State Health Planning & Development Agency.

Matthew McDonald of Jones Walker, LLP, Mobile; Robert C. Lockwood of Wilmer & Lee, P.A., Huntsville; Loree J. Skelton, Birmingham; P. Michael Cole of Wilmer & Lee, P.A., Athens; Walter R. Byars of Steiner, Crum & Byars, Montgomery; and Thomas G. Mancuso, Montgomery, for Shelby Ridge Acquisition Cor-

poration d/b/a Shelby Ridge Rehabilitation Hospital.

Frank C. Ellis, Jr., of Wallace, Ellis, Fowler, Head & Justice, Columbiana, for amici curiae Shelby County Commission and Shelby County Manager Alex Dudchock, in support of HealthSouth of Alabama, LLC, and State Health Planning & Development Agency.

James P. Pewitt, Birmingham, for amicus curiae Alabama Nursing Home Association, in support of Shelby Ridge Acquisition Corporation d/b/a Shelby Ridge Rehabilitation Hospital.

DONALDSON, Judge.

These appeals relate to proceedings arising from requests by health-care providers to build an inpatient physical-rehabilitation hospital in Shelby County. The requests were addressed separately in administrative proceedings and in the Montgomery Circuit Court ("the trial court"). The appeals from the judgments entered by the trial court were consolidated by this court.

The complex, frustrating, and costly procedural histories of these appeals arise from an administrative process required to be followed before a demonstrated health-care need can be met. We are required by current law to conduct a judicial review of the administrative decisions, applying standards provided by the legislature. We cannot change the applicable statutes or rules promulgated pursuant to those statutes, and we must apply the legislatively required standard of review to the facts.

In appeal no. 2120872 and appeal no. 2120907, HealthSouth of Alabama, LLC ("HealthSouth"), and the Alabama State Health Planning and Development Agency ("SHPDA"), respectively, appeal from a judgment of the trial court insofar as it reversed SHPDA's decision to grant a Certificate of Need ("CON") to HealthSouth for 17 inpatient physical-rehabilitation beds ("the SHP-adjustment beds") that had been approved for use in Shelby County in the State Health Plan ("SHP"). HealthSouth and SHPDA also appeal from the judgment of the trial court insofar as it reversed SHPDA's denial of a CON to Shelby Ridge Acquisition Corporation d/b/a Shelby Ridge Rehabilitation Hospital ("Shelby Ridge") for the SHP-adjustment beds and ordered SHPDA to issue a CON to Shelby Ridge for those beds.

In appeal no. 2130628, Shelby Ridge appeals from the trial court's judgment denying its challenge to a CON issued to HealthSouth to operate 17 inpatient physical-rehabilitation beds that were formerly operated in Birmingham ("the Carraway beds") under a CON previously issued to Physicians–Carraway Medical Center f/k/a Carraway Methodist Medical Center ("Carraway").

In appeal no. 2130515, Shelby Ridge appeals the trial court's judgment denying its request for a ruling declaring that SHPDA lacked jurisdiction over HealthSouth's CON application to operate the Carraway beds.

*Background*

*A. Legal Framework*

In order "to prevent the construction of unnecessary and inappropriate health care facilities," the Alabama Legislature has determined that the construction and operation of healthcare facilities in Alabama should be regulated pursuant to a scheme that provides "a system of mandatory reviews of institutional health services." § 22–21–261, Ala.Code 1975. To accomplish this purpose, the legislature has enacted comprehensive regulatory statutes in Title 22, Chapter 21, Article 9, § 22–21–260 et seq., Ala.Code 1975. Any entity or individual planning to furnish a "new insti-

tutional health service" in this state must first obtain a CON from SHPDA's Certificate of Need Review Board ("the CONRB"):[1]

> "(a) On or after July 30, 1979, no person to which this article applies shall acquire, construct, or operate a new institutional health service, as defined in this article, or furnish or offer, or purport to furnish a new institutional health service, as defined in this article, or make an arrangement or commitment for financing the offering of a new institutional health service, unless the person shall first obtain from the SHPDA a certificate of need therefor. . . ."

§ 22–21–265, Ala.Code 1975.

Pursuant to the regulatory scheme established by the legislature, the Statewide Health Coordinating Council ("SHCC") develops the SHP subject to the approval of the Governor. "The [SHP] is a comprehensive plan prepared by the [SHCC] to provide for the 'development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, at reasonable costs, for all residents of the state.'" *Auburn Med. Ctr., Inc. v. East Alabama Health Care Auth.*, 583 So.2d 1342, 1343 (Ala.Civ.App.1990) (quoting former § 22–21–260(4), now § 22–21–260(13), Ala.Code 1975). Proposed institutional health services must be consistent with the SHP:

> "(a) All new institutional health services which are subject to this article and which are proposed to be offered or developed within the state shall be subject to review under this article. No

institutional health services which are subject to this article shall be permitted which are inconsistent with the State Health Plan. For the purposes of this article, new institutional health services shall include any of the following:

> "(1) The construction, development, acquisition through lease or purchase, or other establishment of a new health care facility or health maintenance organization. . . .
>
> " . . . .
>
> "(3) A change in the existing bed capacity of a health care facility or health maintenance organization through the addition of new beds, the relocation of one or more beds from one physical facility to another. . . ."

§ 22–21–263, Ala.Code 1975.

### B. Appeal No. 2130628: Submission of HealthSouth's CON Application to Relocate the Carraway Beds

On July 29, 2009, SHPDA approved HealthSouth's acquisition of the Carraway beds. Carraway had ceased operations on October 31, 2008. Pursuant to Ala. Admin. Code (SHPDA), Rule 410–1–11–.08(2), a CON is considered abandoned if provision of the service for which it was issued—in this case, the use of the Carraway beds—is suspended for over a year. On September 11, 2009, HealthSouth submitted to SHPDA a letter of intent to relocate the Carraway beds to a proposed 34–bed, inpatient, physical-rehabilitation hospital to be constructed in Shelby County.

On October 20, 2009, HealthSouth filed a CON application with SHPDA, stating, in part:

---

[1]

"In the health-care-services regulatory scheme, the terms 'SHPDA' and 'CONRB' are deemed synonymous and are used interchangeably. Ala. Admin. Code (SHPDA) Rule 410–1–2–.01. For ease of understanding, we generally refer to the panel of individuals that holds hearings on CON applications as the CONRB, while using the term SHPDA to refer to the agency in its more general regulatory capacity."
*Ex Parte STV One Nineteen Senior Living, LLC,* 161 So.3d 196, 199 n. 2 (Ala.2014).

"This application seeks to relocate seventeen (17) inpatient rehabilitation beds previously in service at Physicians–Carraway Medical Center f/k/a Carraway Methodist Medical Center in Birmingham, Alabama, and place them in a thirty-four (34) bed facility to be constructed in Shelby County close to Shelby Baptist Medical Center. Approval for an additional seventeen (17) beds will be sought in another CON application to be filed at a later date. . . .

"HealthSouth considers the need for inpatient rehabilitation beds in Alabama's fastest growing county, Shelby County, so great that it justifies this approach to obtaining CON approval, HealthSouth Corporation considers a thirty-four (34) bed facility the minimum number of beds required to make the project economically feasible and clinically efficient and expects to file a subsequent CON application to add another seventeen (17) beds to the proposed facility and bring it to full capacity. . . ."

In the application, HealthSouth described some options regarding the separate CON application referenced in the application. One alternative was to seek an adjustment to the SHP to add to the permissible number of inpatient physical-rehabilitation beds in Shelby County and, if the adjustment was approved, "to file a separate CON application for the placement of these beds in [the proposed] facility so that there would be a full complement of thirty-four (34) beds." All the projected data and cost estimates in the application pertained to the operation and construction of a 34–bed facility.

Pursuant to the SHP, Shelby County is located in Region III. According to the SHP, on November 2, 2009, Region III had a total of 289 existing inpatient physical-rehabilitation beds, concentrated in Jefferson County, resulting in an excess of 125 beds for the region. There were no existing inpatient physical-rehabilitation beds located in Shelby County at the time. The statistics in the record show a decline in the occupancy rate for the beds in Region III from 71.3% in 2005 to 58.7% in 2007.

On December 4, 2009, Shelby Ridge filed a notice of intervention and opposition to HealthSouth's project. On December 15, 2009, Shelby Ridge filed a contest of HealthSouth's CON application and a request for a hearing before an administrative-law judge ("ALJ"), pursuant to § 22–21–275(6), Ala.Code 1975, and Ala. Admin. Code (SHPDA), Rules 410–1–8–.01 and –.02.[2] SHPDA granted Shelby Ridge's request and appointed an ALJ on December 21, 2009. Beginning in December 2010, the proceeding before the ALJ was stayed for nearly two years upon motions by both parties.

### C. Appeal Nos. 2120872 and 2120907: CON for SHP–Adjustment Beds in Shelby County

Upon petition by HealthSouth, the SHCC and Governor Robert Bentley approved the adjustment of the SHP to indicate the need for the SHP-adjustment beds on September 15, 2011. *Columbiana Health & Rehab., LLC v. Statewide Health Coordinating Council,* 138 So.3d 305, 308 (Ala.Civ.App.2013) (affirming the denial of a challenge to the adoption of the SHP adjustment).

HealthSouth and Shelby Ridge both applied to obtain a CON for the available SHP-adjustment beds. HealthSouth sought to build a facility for the SHP-

2. Three other health-care companies contested HealthSouth's CON application but later withdrew from the proceedings.

adjustment beds with expansion space in the proposed facility for an additional 17 inpatient physical-rehabilitation beds, for a total of 34 beds. HealthSouth hoped to fill the space for the additional 17 beds with the CON it was seeking in the application to relocate the Carraway beds.

Shelby Ridge's CON application for the SHP-adjustment beds proposed a 17–bed, inpatient, physical-rehabilitation hospital located on the Shelby Ridge Nursing Home campus in Alabaster next to its existing 131–bed skilled-nursing facility. Shelby Ridge's proposed facility would share services, space, and staff with the existing nursing facility. Shelby Ridge's proposed facility did not include planned space for additional inpatient physical-rehabilitation beds beyond the 17 beds approved in the SHP for Shelby County at that time.

Pursuant to § 22–21–275(6) and Rules 410–1–8–.01 and –.02, HealthSouth and Shelby Ridge contested each other's applications, and an ALJ was appointed to hear the issues. The ALJ considered the applications together pursuant to Ala. Admin. Code (SHPDA), Rule 410–1–7–.19, which provides for a comparative review of applications proposing similar types of facilities that affect the same health-service area. Sections 22–21–264 and –266, Ala.Code 1975, provide the required criteria to be considered in reviewing and approving CON applications. Those criteria include, among other factors, an assessment of cost containment, financial feasibility, and quality of patient care. Pursuant to administrative rules, the applicant for a CON has the burden of producing evidence to support an application. Rule 410–1–6–01, Ala. Admin. Code (SHPDA).

The ALJ heard testimony from witnesses presented by both HealthSouth and Shelby Ridge, and various documents were presented. The ALJ produced a 51–page recommended order with detailed findings of fact and conclusions of law. The ALJ recommended that the CONRB grant HealthSouth's application for the 17–bed CON and deny Shelby Ridge's application. Shelby Ridge filed exceptions with the CONRB to the ALJ's recommended order as authorized by administrative rules. The CONRB conducted a hearing on the applications. At the hearing, in response to a question asked by the CONRB, HealthSouth committed to operating the 17 beds in its proposed facility if it received a CON regardless of whether it received approval for any additional beds in the future, including approval for relocating the Carraway beds to Shelby County:

"[CONRB member]: Mr. Chairman, I'm inclined to second [the motion to affirm the ALJ's decision] if I'm allowed a point of order to ask ... a business person from HealthSouth to ... absolutely reassure us that if the shell is built for 34 [beds] and if you're unable to get the 17 transferred, that you would in fact continue to provide the clinical service—because ultimately it's about what we can offer the people there—and that you will not cease to operate that facility if, for some reason, you are unable to get the other 17 transferred there. . . .

"[HealthSouth representative]: We're very committed to this project; we have been for four years. We will build this hospital. . . .

"THE CHAIRMAN: Let me make sure I understood you. You're saying irregardless of what happens, you're going to keep this facility open with 17 beds?

"[HealthSouth representative]: We will open it and operate it.

"THE CHAIRMAN: ... [The] motion is to approve the 17 beds, and if the facility is built with 34 and the other 17

beds are not granted in the future, you're still going to operate this for the people of Shelby County.

"[HealthSouth representative]: We will."

Following the hearing, the CONRB issued a brief order on September 12, 2012, adopting the findings of fact and conclusions of law in the ALJ's recommended order. The CONRB denied Shelby Ridge's application and granted Health-South's application for a CON to use the SHP-adjustment beds. The CONRB's order and the issued CON recognized HealthSouth's plan to seek a CON to operate the Carraway beds at its proposed facility and its intention to ultimately operate a 34–bed facility. However, the CON specifically states that it "was granted with the stipulation for [HealthSouth] to commence operations of the seventeen (17) approved beds regardless of whether CON approval is obtained for the pending transfer of the [Carraway] beds . . . to the same facility."

Pursuant to § 41–22–20(b), Ala.Code 1975, Shelby Ridge petitioned for judicial review of the CONRB's decision to the trial court. After hearing arguments from counsel, the trial court entered a judgment on April 12, 2013, reversing the decision.[3] The trial court found that HealthSouth's CON application was inconsistent with the SHP because, it determined, the evidence showed that HealthSouth was actually seeking to build and operate a 34–bed hospital. According to the trial court, the proposed 34–bed hospital was inconsistent with the SHP because only 17 inpatient physical-rehabilitation beds had been approved for Shelby County. The trial court also found that the proposed facility was located in a region that already had too many inpatient physical-rehabilitation beds and in which similar facilities were being underutilized. Therefore, the trial court reversed the decision of the CONRB to issue a CON to HealthSouth for the SHP-adjustment beds.

The trial court further found that Shelby Ridge's application was consistent with the SHP and ordered the CONRB to approve Shelby Ridge's application for the CON. HealthSouth and SHPDA both filed motions to alter, amend, or vacate the trial court's judgment, which were denied by the trial court. HealthSouth and SHPDA each filed a timely notice of appeal with this court, and those appeals were docketed as appeal nos. 2120872 and 2120907.

### D. Appeal No. 2130628: CON to Relocate the Carraway Beds

On August 21, 2012, the ALJ lifted the stay that had been issued in 2010 of the proceeding regarding HealthSouth's CON application to relocate the Carraway beds ("the relocation-bed CON"). The proceeding regarding the relocation-bed CON progressed before SHPDA parallel to the proceeding regarding the CON for the SHP-adjustment beds before the trial court. In October 2012, the ALJ appointed to consider the application for the relocation-bed CON conducted a hearing that lasted six days. On December 17, 2012, the ALJ issued an order recommending that HealthSouth's application be denied. The ALJ found, among other things, that the application, which was based on Health-South's intent to build a 34–bed facility, was inconsistent with the SHP and that, pursuant to administrative rules, the application for the relocation-bed CON had been abandoned. The ALJ also found that HealthSouth had failed to show that its

---

3. The process leading up to the hearing before the trial court is not entirely clear, but neither party claims on appeal that any irregularities in that process are grounds to reverse the judgment.

proposal was financially feasible because, the ALJ determined, HealthSouth had not presented sufficient information regarding the operation of the 17 Carraway beds because all the construction costs, operating costs, and revenue projections provided by HealthSouth pertained only to a 34–bed facility.

On January 16, 2013, the parties met before the CONRB for consideration of HealthSouth's application for the relocation-bed CON. After the presentation of arguments, the CONRB rejected the recommendation of the ALJ and approved HealthSouth's application for the relocation-bed CON. On January 31, 2013, the CONRB chairman issued a "Ruling of the [CONRB]" finding that the CON application was consistent with the version of the SHP in effect at the time HealthSouth submitted its application, that Health-South's acquisition of the initial CON for Carraway beds was valid, that the initial CON for the Carraway beds had not been abandoned, that the proposed facility would be financially viable, and that alternatives to HealthSouth's project had been studied and were found to be not practicable. On March 4, 2013, the relocation-bed CON was issued to HealthSouth.

On March 29, 2013, Shelby Ridge petitioned the trial court for judicial review of SHPDA's order granting HealthSouth the relocation-bed CON. On October 9, 2013, and January 13, 2014, the trial court heard arguments from the parties.[4] On February 10, 2014, the trial court entered a final judgment affirming the CONRB's grant of the relocation-bed CON to HealthSouth. On March 12, 2014, Shelby Ridge filed a motion to alter, amend, or vacate the trial court's judgment, requesting a hearing.

On March 18, 2014, the trial court denied Shelby Ridge's postjudgment motion without holding a hearing. On April 29, 2014, Shelby Ridge filed a notice of appeal, and that appeal was docketed as appeal no. 2130628.

### E. Appeal No. 2130515: Shelby Ridge's Jurisdictional Challenge

On January 5, 2011, Shelby Ridge petitioned SHPDA for a declaratory ruling pursuant to Rule 410–1–9–.01, Ala. Admin. Code (SHPDA), asserting that SHPDA lacked jurisdiction over HealthSouth's application for the relocation-bed CON. Shelby Ridge asserted that the CON application was inconsistent with the SHP and should have be dismissed. On January 18, 2011, Governor Bentley placed a moratorium on processing CON applications that lasted until February 9, 2011. As a result, SHPDA canceled the hearing scheduled for consideration of Shelby Ridge's petition challenging jurisdiction. Under § 41–22–11(b), Ala.Code 1975, the "[f]ailure of the agency to issue a declaratory ruling on the merits within 45 days of the request for such ruling shall constitute a denial of the request as well as a denial of the merits of the request and shall be subject to judicial review." Because a ruling was not issued within 45 days, the petition of Shelby Ridge was denied pursuant to the statute.

On April 14, 2011, Shelby Ridge filed a complaint for declaratory relief in the trial court, challenging the jurisdiction of SHPDA over the application for the relocation-bed CON, and, in the alternative, for judicial review of SHPDA's denial of its request for a declaratory ruling. Shelby Ridge sought a judgment declaring that the alleged inconsistency of HealthSouth's CON application with the SHP deprived

---

4. The proceedings in the trial court regarding the relocation-bed CON and the CON for SHP-adjustment beds were before different trial judges. The proceedings for the relocation-bed CON and the challenge to SHPDA's jurisdiction to issue that CON were before the same trial judge.

SHPDA of jurisdiction to consider the CON application or to issue the CON. On December 8, 2011, the trial court entered an order appointing a special master ("the special master") to hear all matters in the proceeding and to submit a recommendation to the trial court.

On September 13, 2012, the special master conducted a final hearing. On January 14, 2013, the special master issued his report recommending the entry of a judgment granting Shelby Ridge's request for a ruling specifically declaring that SHPDA lacked jurisdiction over HealthSouth's application on the basis that HealthSouth's application was inconsistent with the SHP. On January 22, 2013, Shelby Ridge filed a motion, pursuant to Rule 53, Ala. R. Civ. P., requesting that the trial court adopt the special master's report. On January 29, 2013, HealthSouth filed its objections to the special master's report.

After Shelby Ridge filed its petition for judicial review regarding the grant of the relocation-bed CON to HealthSouth, the trial court heard the issues pertaining to that case together with the issues concerning Shelby Ridge's declaratory-ruling request. *See supra* note 4. On February 10, 2014, the trial court entered an order dismissing Shelby Ridge's complaint for declaratory relief or for judicial review of SHPDA's denial of its request for a declaratory ruling. The trial court deferred to the CONRB's determination that HealthSouth's application for the relocation-bed CON was consistent with the SHP. The trial court ruled that Shelby Ridge's complaint was moot, stating that

"[t]his appeal is due to be dismissed because the Order of the [CONRB] granting HealthSouth's CON application that is the basis of this appeal is also on appeal in Civil Action No. CV–2013–

900548.[5] Under the [Alabama Administrative Procedure Act], an appeal of an agency final decision is the appropriate and sole remedy available once an agency has acted and issued its final Order. Accordingly, this appeal is due to be dismissed as moot."

On March 12, 2014, Shelby Ridge filed a motion to alter, amend, or vacate the judgment, requesting a hearing for oral argument. On March 19, 2014, the trial court denied Shelby Ridge's postjudgment motion without holding a hearing. On March 21, 2014, Shelby Ridge filed a timely notice of appeal, and that appeal was docketed as appeal no. 2130515.

### F. Consolidated Appeals

On July 26, 2013, this court consolidated appeal nos. 2120872 and 2120907 *ex mero motu*. On February 25, 2014, this court conducted oral argument regarding those two appeals. On April 7, 2014, HealthSouth and SHPDA jointly moved to consolidate appeal nos. 2120872 and 2120907 with appeal nos. 2130515 and 2130628 and to consider all four appeals together. On May 23, 2014, we granted that motion.

### Standard of Review

Section 41–22–20(k), Ala.Code 1975, provides for an extremely limited scope of judicial review regarding the CONRB's decision to issue a CON:

"Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony

---

**5.** CV–2013–900548 is the trial court's case number for the judicial-review action regard-

ing SHPDA's order granting HealthSouth the relocation-bed CON.

and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:

"(1) In violation of constitutional or statutory provisions;

"(2) In excess of the statutory authority of the agency;

"(3) In violation of any pertinent agency rule;

"(4) Made upon unlawful procedure;

"(5) Affected by other error of law;

"(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

"(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."

■ " '[T]his court reviews a circuit court's judgment as to an agency's decision without a presumption of correctness because the circuit court is in no better position to review the agency's decision than is this court. *Clark v. Fancher*, 662 So.2d 258, 261 (Ala.Civ.App.1994).' " *Affinity Hosp., LLC v. Brookwood Health Servs., Inc.*, 143 So.3d 208, 211–12 (Ala.Civ.App. 2013) (quoting *Brookwood Health Servs., Inc. v. Affinity Hosp., LLC*, 101 So.3d 1221, 1225 (Ala.Civ.App.2012)).

In its challenge to SHPDA's jurisdiction, Shelby Ridge first petitioned SHPDA for a declaratory ruling pursuant to § 41–22–11, Ala.Code 1975, during proceedings concerning HealthSouth's application for the relocation-bed CON. Section 41–22–11 provides, in pertinent part:

"(a) On the petition of any person substantially affected by a rule, an agency may issue a declaratory ruling with respect to the validity of the rule or with respect to the applicability to any person, property or state of facts of any rule or statute enforceable by it or with respect to the meaning and scope of any order of the agency. . . .

"(b) . . . Such rulings are subject to review in the Circuit Court of Montgomery County, unless otherwise specifically provided by the statute, in the manner provided in Section 41–22–20 for the review of decisions in contested cases. Failure of the agency to issue a declaratory ruling on the merits within 45 days of the request for such ruling shall constitute a denial of the request as well as a denial of the merits of the request and shall be subject to judicial review."

After that petition was denied pursuant to the statute, the only recourse available to Shelby Ridge "was to seek judicial review of the CONRB's decision in accordance with § 41–22–20." *Ex parte RCHP–Florence, LLC*, 155 So.3d 1005, 1014 (Ala.Civ. App.2013). As this court has already noted, § 41–22–20 provides the procedures and standards for a court's review of agency decisions. Although Shelby Ridge sought an adjudication by the trial court of the issue whether SHPDA had jurisdiction over the application for the relocation-bed CON by filing a complaint for a declaratory ruling pursuant to § 41–22–10, Ala. Code 1975, and the Declaratory Judgment Act, Shelby Ridge was precluded from seeking such an adjudication. *Id.* at 1018. Section 41–22–10 provides that "[t]he validity or applicability of a rule may be determined in an action for a declaratory judgment or its enforcement stayed by injunctive relief in the circuit court of

Montgomery County, unless otherwise specifically provided by statute. . . ." Because § 41–22–11(b) specifically provides that review of an agency's decision on a petition for a declaratory ruling is to be conducted pursuant to § 41–22–20, Shelby Ridge's claims asserted pursuant to § 41–22–10 and the Declaratory Judgment Act failed to invoke the jurisdiction of the trial court. *See Ex parte RCHP–Florence,* 155 So.3d at 1018. Accordingly, as with the other issues raised by the parties, we apply the standard of review set forth in § 41–22–20(k) to the issues raised in regard to SHPDA's denial of Shelby Ridge's request for a declaratory ruling pursuant to § 41–22–11.

## Discussion

### I. The CON Applications

■ We review the CONRB's evaluation of CON applications in light of the legislature's stated purpose of "prevent[ing] the construction of unnecessary and inappropriate health care facilities through a system of mandatory reviews of new institutional health services." § 22–21–261. "The basis for state health planning is the projection of bed need." *Ex parte Shelby Med. Ctr., Inc.,* 564 So.2d 63, 69 (Ala.1990). Section 22–21–266(1) requires a CON application to be consistent with the SHP at the time that it is submitted. SHPDA "has no alternative but to deny [an] application" that is inconsistent with the SHP. *Auburn Med. Ctr., Inc.,* 583 So.2d at 1343. A primary goal of our statutory scheme regarding the provision of health services is to foster cost containment. *Humana Med. Corp. v. State Health Planning & Dev. Agency,* 460 So.2d 1295, 1299 (Ala.Civ.App.1984) (affirming SHPDA's denial of CON based, in part, on findings that the project did not foster cost containment). "All construction projects shall be designed and constructed with the objective of maximizing cost containment, protection of the environment and conservation of energy. The impact of the construction costs, including financing charges on the cost of providing health care, shall be considered." Ala. Admin. Code (SHPDA), Rule 410–1–6–.14.

■ The CONRB evaluated, and the trial court reviewed, the three CON applications before us on appeal in two separate proceedings. HealthSouth and Shelby Ridge submitted competing CON applications for the SHP-adjustment beds, and HealthSouth submitted an application for the relocation-bed CON regarding the Carraway beds. Even though both of HealthSouth's CON applications propose the construction of the same 34–bed facility in Shelby County, we must recognize that we are presented with two separate proceedings that each involve an application for a 17–bed CON. *See Ex parte Brookwood Health Servs., Inc.,* 781 So.2d 954, 957 (Ala.2000) (directing trial court to set aside transfer order that would have combined the judicial review of two separate grants of CONs with virtually identical records). HealthSouth initiated the different proceedings by submitting its two CON applications separately and at different times. Different ALJs heard the evidence and arguments presented in support of each CON application in separate proceedings that produced different recommendations in regard to HealthSouth's proposed project. The CONRB conducted separate hearings regarding each CON application and issued two distinct CONs at different points in time. Judicial review of the CONRB's decisions on the CON applications occurred in separate actions before two different judges of the trial court, which resulted in two separate judgments that differ in their rulings regarding the propriety of the CONRB's approval of HealthSouth's CON applications. There is

no indication that HealthSouth's two applications were procedurally linked in the proceedings before SHPDA or the trial court. In general, cases do not lose their individual character following consolidation. *See, e.g., League v. McDonald,* 355 So.2d 695, 697 (Ala.1978) ("Where several actions are ordered to be consolidated for trial, each action retains its separate identity and thus requires the entry of a separate judgment. Ala. R. Civ. P. 42(a) and Committee Comments; *Teague v. Motes,* 57 Ala.App. 609, 330 So.2d 434 (1976)."). The consolidation of the cases before this court pursuant to Rule 3(b), Ala. R.App. P., was for the purpose of considering similar issues of law related to separate proceedings with many common facts. We, therefore, review the CONRB's decisions regarding the CONs according to the evidence presented to the CONRB at the time of the proceedings.

■■■ We note first that under § 41–22–20(k)(6), Ala.Code 1975, "neither this court nor the circuit court may substitute its judgment for that of the administrative agency as fact-finder; the judiciary is required to give the agency's factual findings due deference." *State Health Planning & Dev. Agency v. West Walker Hospice, Inc.,* 993 So.2d 25, 29 (Ala.Civ.App.2008). "[C]onsidering [the CONRB]'s recognized expertise in this specialized area, the weight and significance of any given piece of evidence presented in a CON-application case is left primarily to [the CONRB]'s discretion." *Affinity Hosp., LLC v. St. Vincent's Health Sys.,* 129 So.3d 1022, 1029 (Ala.Civ.App.2012) (citing *Colonial Mgmt. Grp., L.P. v. State Health Planning & Dev. Agency,* 853 So.2d 972, 975 (Ala.Civ.App.2002)). Under this standard of review, the question for a reviewing court is not whether it would have reached the same decision upon the same facts, but whether the agency could have,

in exercising its exclusive authority to weigh the facts, reached the decision it did. "Regarding factual matters, a circuit court may reverse [the CONRB]'s decision if the decision is '[c]learly erroneous in view of the reliable, probative, and substantial evidence of the whole record' or is '[u]nreasonable, arbitrary, or capricious.'" *Id.* (quoting § 41–22–20(k)(6) and (7)).

### A. CON Applications for the SHP–Adjustment Beds

First, we consider the proceedings regarding the CON for the SHP-adjustment beds, in which the trial court reversed the CONRB's decisions to grant the CON to HealthSouth and to deny the CON to Shelby Ridge. Although SHPDA evaluated the CON applications for the SHP-adjustment beds from Shelby Ridge and HealthSouth together pursuant to Ala. Admin. Code (SHPDA), Rule 410–1–7–.19, we note that SHCC's approval of an adjustment to the SHP, adding 17 inpatient physical-rehabilitation beds to Shelby County, did not require the CONRB to grant a CON for those beds to either HealthSouth or Shelby Ridge. The criteria for obtaining a CON is not the same as the criteria to adjust the SHP. HealthSouth and Shelby Ridge separately bore the burden of establishing that it met the criteria to obtain a CON for the SHP-adjustment beds. Ala. Admin. Code (SHPDA), Rule 410–1–6.01. The issue that was before the trial court and that is now before this court is not whether HealthSouth or Shelby Ridge was more qualified but, rather, is whether either party met its burden of showing that a CON for the SHP-adjustment beds should be issued.

#### 1. Evidence Regarding a 17–Bed Facility

In adopting the ALJ's recommended order regarding the SHP-adjustment beds, the CONRB adopted the ALJ's findings of

fact as evidentiary support for its decision. The evidence before the ALJ showed that the operation of a facility with only 17 inpatient physical-rehabilitation beds was not only cost-prohibitive but also would not provide a sufficient number of patients to adequately assess the services being provided. HealthSouth's president of the Southeast Region testified that "[a free-standing 17–bed hospital is] not critical mass enough to provide good clinical outcomes, and then it's also just too small from a financial perspective. You can't treat enough patients to support a free-standing building at 17 beds." The medical director and physiatrist at Health-South's Lakeshore location testified before the ALJ as follows under questioning from HealthSouth's counsel:

"Q. Is a 17–bed hospital sufficient clinically for Shelby County?

"A. Well, it isn't just based on population; but there are also—if you look at freestanding hospitals in the U.S. there,—there aren't 17–bed freestanding hospitals because a 17–bed hospital cannot provide the depth of specialization that is needed to serve the variety of rehab patients that are typically seen in a rehab hospital."

No evidence was presented before the ALJ or the CONRB that contradicts the testimony of those witnesses.

Based on that evidence, the ALJ's findings of fact indicate that operating a facility with only 17 inpatient physical-rehabilitation beds was not feasible financially or clinically, which are key criteria for approving a CON application. *See West Walker Hospice, Inc.*, 993 So.2d at 27 (affirming the CONRB's denial of a CON application based, in part, on a finding that the project was not financially feasible); *Brookwood Health Servs., Inc. v. Baptist Health Sys., Inc.*, 936 So.2d 529, 535 (Ala.Civ.App.2005)(affirming the CONRB's denial of a CON application based, in part, on a finding that reduced caseloads would affect the likelihood of positive surgical outcomes). The ALJ found that the parties agreed that a 17–bed, inpatient, physical-rehabilitation hospital "is not financially viable in and of itself." Further, the ALJ found that "[t]he evidence presented established that a seventeen (17)-bed free-standing inpatient rehabilitation hospital is not large enough, would not have the capacity to treat enough patients to develop a great deal of expertise, and would not have enough critical mass to provide good clinical outcomes." The evidence establishing that operating a facility with only 17 inpatient physical-rehabilitation beds is not financially or clinically viable is a critical factor in our evaluation of the CONRB's decisions regarding the CON applications submitted by Shelby Ridge and HealthSouth.

### 2. Shelby Ridge's CON Application

Regarding Shelby Ridge's CON application, the ALJ found that the financial and clinical viability of Shelby Ridge's project hinged on a sharing arrangement between the proposed 17–bed facility and Shelby Ridge's existing skilled-nursing facility. After testimony from Shelby Ridge's own witnesses about the sharing arrangement, the ALJ expressed many practical concerns about the nursing facility's technological limitations, as well as its capacity to share services, and also about regulatory issues regarding obtaining licensing with the sharing arrangement.

The record before the CONRB supports the determination that, between Health-South and Shelby Ridge, HealthSouth was more competent and qualified to obtain the CON for the SHP-adjustment beds. *See* § 22–21–264(5) (The CONRB is empowered to "[d]etermin[e] ... the most appropriate applicant in the event of duplicative applications, for providing the proposed

health care facility or service, such determination to be established from the evidence as to the ability of the person, directly or indirectly, to render adequate service to the public . . . ."). The evidence supports a finding that, between the two applicants, HealthSouth had the superior experience, management capabilities, and focus to provide physical-rehabilitation services. The ALJ stated that "[HealthSouth's] proposed project [was] superior to the proposed [Shelby Ridge] project in all respects." Conversely, the ALJ determined that Shelby Ridge did not have the management personnel or the experience with the type of inpatient physical-rehabilitative services required to appropriately provide the services necessary for the proposed beds. At the time of the hearing before the ALJ, Shelby Ridge did not have a final management agreement with the company that it expected to manage its proposed facility. The management company had not visited the proposed site or the nursing facility, had never operated an inpatient physical-rehabilitation hospital pursuant to a sharing arrangement with a related facility, and was not familiar with the applicable Alabama regulatory requirements. The ALJ accordingly expressed doubt about Shelby Ridge's ability to assemble the personnel necessary for the level of inpatient physical-rehabilitation services required by the SHP.

The ALJ also found that Shelby Ridge had failed to provide any specific information pertaining to several of the CONRB's review criteria, and, according to the ALJ, Shelby Ridge's application demonstrated a lack of investigation and thoroughness regarding key aspects of its proposal, such as the sharing arrangement with its skilled-nursing facility. The ALJ stated: "A fair and reasonable interpretation of the evidence is that [Shelby Ridge] has no real desire or intent to build a Rehab Hospital and is acting rather to maintain

its market share and prevent another provider of services from locating in Shelby County." A review of Shelby Ridge's application and the evidence prompted the CONRB chairman to declare that Shelby Ridge "did a horrible job."

For the reasons discussed above, the CONRB's decision not to grant a CON for the 17 SHP-adjustment beds to Shelby Ridge is due to be upheld. We note that the CONRB, as well as the ALJ, determined that Shelby Ridge's CON application did not meet the CONRB's criteria regarding consistency with the SHP, licensing for the project, consistency with Shelby Ridge's long-range development plans, and complying with the requirements in § 22–21–266, Ala.Code 1975. Substantial evidence supports those determinations, and, based on the applicable standard of review, the CONRB's decision as to Shelby Ridge's CON application should not have been reversed by the trial court. The CONRB's decision to deny Shelby Ridge's application was not clearly erroneous, nor are there any other grounds to reverse the CONRB's decision under § 41–22–20(k). Accordingly, the CONRB's denial of Shelby Ridge's CON application for the SHP-adjustment beds was due to be upheld, and the trial court's judgment reversing that decision, which has been challenged in appeal nos. 2120872 and 2120907, is reversed.

*3. HealthSouth's CON Application*

██ The record is clear that HealthSouth applied for the SHP-adjustment-bed CON in anticipation of the ultimate approval for 34 beds in its proposed facility. HealthSouth's projections and data pertained to the operation and construction of the proposed 34–bed facility, yet the issue before the CONRB was whether a CON should be issued to HealthSouth for only 17 beds. The CON was issued for a differ-

ent number of beds than was supported by the evidence. We must determine whether the difference between the number of beds permitted in the CON and the number of beds supported by the evidence constitutes a material difference. *See Affinity Hosp.*, 129 So.3d 1022 (holding that issuing a CON to relocate 372 beds when all the presented evidence pertained to a proposed 398–bed facility was an immaterial reduction in beds because the lesser number of beds permitted by the CON would not affect the cost of the project or the projected revenue and expenses).

The evidence presented by HealthSouth established that operating a 34–bed, inpatient, physical-rehabilitation facility was economically and clinically superior to operating a 17–bed facility and that it intended to pursue approval to operate the higher number of beds. One CONRB member summarized the circumstances of HealthSouth's application:

> "Someone—in this case, Healthsouth—went to the SHCC Board and asked for permission for an allowance in the State Health Plan to allow the building of a 17–bed facility in Shelby County to provide rehabilitation services to the residents of Shelby County.... [T]he SHCC Board said, yes, we think there is a need for 17 beds for rehabilitation in Shelby County.
>
> "So now, with that having been decided, both Healthsouth and Shelby Ridge applied for a CON to give them the power to go to Shelby County, either one of them, and build the 17–bed facility. And that is what was put before the ALJ: which of these two companies do you want to go up there to Shelby County and build the new approved 17 beds for rehabilitation there. The ALJ said I approve Healthsouth and I deny [Shelby] Ridge to go and build that 17–bed hospital up there in Shelby County.

> "What we are really being asked to vote on today is whether to uphold the ALJ's decision to grant permission to Healthsouth or to overrule—to deny it....
>
> "That's really what we're asked to do today except for one little more additional problem.... Healthsouth now says we have an ALJ who has already given us permission if the Board would uphold—uphold his decision to go build a 17–bed hospital in Shelby County, but that's not what we plan to do. We plan to build a 34–bed hospital in Shelby County.... Where that comes from is that Healthsouth now has power over access to 17 beds of rehabilitation that have been closed down at Carraway Hospital in Birmingham. So they want to relocate those beds in addition with these 17 to Shelby County. That requires a certificate of need....
>
> "So the permission to remove these 17 beds from Jefferson County, Carraway Hospital, and move them to Shelby County has not yet been worked out; yet, at the very same time, it seems to me that someone on the HealthSouth team has said that it would be not really possible or acceptable to build a 17–bed facility.
>
> "What that means is economically you probably don't think it would be so cost-effective to build a 17–bed facility."

The evidence adopted by the CONRB established that operating a 17–bed facility was economically infeasible and clinically insufficient. Therefore, the difference between the number of beds issued in the CON and the number of beds directly supported by the evidence was material to an evaluation of HealthSouth's application, and the decision to grant a 17–bed CON to HealthSouth solely on the basis of the evidence presented is "[c]learly erroneous in view of the reliable, probative, and sub-

stantial evidence on the whole record." § 41–22–20(k)(6).

The CONRB, however, conditioned the issuance of the CON for the SHP-adjustment beds on a commitment from Health-South that it would operate 17 beds in its proposed 34–bed facility regardless of the outcome of the decision on the application for the relocation-bed CON. To fulfill that condition, HealthSouth had to incur the expense of building a 34–bed facility and expend resources for operating a 17–bed facility indefinitely. Based on the evidence presented, that undertaking would require the operation of a financially infeasible health-care facility unable to deliver desired clinical outcomes, with the speculative hope that events would subsequently justify the approval of a 34–bed facility. The question, though, is whether the evidence supported the actual CON issued for 17 beds.

HealthSouth asserts that its proposed facility is cost-effective because it contains the capacity for expansion within a county that is projected to experience significant population growth. The evidence in favor of a 34–bed facility, however, does not mitigate the undisputed evidence against the operation of a facility containing only 17 beds, which is the number of beds the CONRB authorized in the CON. The CONRB could certainly consider Health-South's "long-range development plan." § 22–21–264(2); *see also* § 22–21–264(5)(d)(permitting the CONRB to consider evidence of an applicant's "long-range planning program"). But consideration of that factor cannot justify granting a CON that is contrary to the evidence regarding current operating capacity. Moreover, although the CONRB was aware that HealthSouth was seeking a CON to relocate the Carraway beds to Shelby County, a decision on that CON application had not yet been made at the time the CONRB issued the 17–bed CON for the SHP-adjustment beds. The ALJ appointed to consider the application for the relocation-bed CON had not even conducted a hearing for that contested CON application.

We recognize that the record before the CONRB clearly showed a need for inpatient physical-rehabilitation services in Shelby County. But the legislature has established review criteria for the CONRB to utilize in determining whether to grant a CON. We cannot defer to the CONRB's decision where there is no reliable, probative, or substantial evidence in the record to support a CON as granted. § 41–22–20(k). The CONRB's decision to grant a CON to HealthSouth to operate only 17 beds is not supported by the record before the agency and, as such, is clearly erroneous. § 41–22–20(k)(6). We therefore affirm the trial court's judgment reversing the CONRB's decision to grant Health-South's application for the 17–bed CON to HealthSouth, which judgment has been challenged in appeal nos. 2120872 and 2120907, although we do so for reasons other than those given by the trial court. *See Norandal U.S.A., Inc. v. Graben,* 18 So.3d 405, 409 (Ala.Civ.App.2009) (citing *Chadwick Timber Co. v. Philon,* 10 So.3d 1014, 1021 (Ala.Civ.App.2007))("[T]his court may affirm a correct judgment for any reason, even if the trial court did not rely on that reason in reaching its judgment."). We accordingly pretermit discussion of other issues raised in appeal nos. 2120872 and 2120907 directed to the portion of the trial court's judgment regarding HealthSouth's CON application for the SHP-adjustment beds.

### B. *HealthSouth's Application for the Relocation–Bed CON*

We next consider the trial court's judgment upholding the CONRB's decision to grant HealthSouth the relocation-bed CON

to relocate the Carraway beds to the proposed 34–bed facility in Shelby County. In its CON application to relocate the Carraway beds, HealthSouth stated:

> "HealthSouth Corporation considers a thirty-four (34) bed facility the minimum number of beds required to make the project economically feasible and clinically efficient. . . . HealthSouth has developed and constructed numerous freestanding inpatient rehabilitation facilities, with thirty-four (34) beds the smallest initial bed capacity of any of these facilities."

As in its CON application for the SHP-adjustment beds, all the evidence presented by HealthSouth pertained to the construction and operation of a 34–bed facility. For example, Dr. Paula Stewart, the medical director at HealthSouth's Lakeshore rehabilitation hospital, stated the following to the CONRB:

> "[T]here is a span of diagnoses that we see in a rehab hospital. We need 34 beds to allow the proper number of therapists and physicians to provide the range of services necessary with the range of patients that we see.
>
> "Is that point clear? . . . [W]e really need to have that number of beds to be able to offer the clinical services that are required."

Because the evidence presented pertains only to a 34–bed facility, we must determine whether a reasonable basis accounts for the difference between the 17 beds issued in the CON to HealthSouth and the number of beds supported by the evidence. *See Affinity Hosp.*, 129 So.3d at 1029 (examining whether difference between the number of beds permitted in a CON and the number of beds supported by the evidence was material).

In affirming the CONRB's decision, the trial court found that the CONRB had granted HealthSouth a CON to relocate the Carraway beds "to a previously approved 34–bed inpatient rehabilitation hospital in Shelby County." The trial court referenced the previously approved CON to support its findings that the application for relocating the Carraway beds was consistent with the SHP, made common sense, and was economically sensible. Our review of the hearing before the CONRB and the ruling issued by the CONRB supports the trial court's view that the CONRB relied on the previously granted CON to HealthSouth for the SHP-adjustment beds in making its decision. HealthSouth's position in the CONRB hearing was premised on the previously approved 34–bed facility. Counsel for HealthSouth argued:

> "[A]s a board, you approved this project in terms of a 34–bed facility with the right to operate 17. Those were the 17 that were created by the SHCC and approved by the Governor. So at this point, HealthSouth, subject to appeals from Shelby Ridge, has the right to build a 34–bed facility, but only use 17 beds. So you would be depriving everyone here out of a needed service.
>
> " . . . .
>
> "You've already approved those 17 beds, awarded them to HealthSouth; and you've approved all the capital costs in this project. So you've got a hospital sitting there with a ghost wing, and this is asking for the right to put that ghost wing into service."

In questioning counsel for Shelby Ridge, a CONRB member stated:

> "[I]t appears to be that since this board has already given [HealthSouth] permission to build a facility for 17 beds, y'all's only opposition is to moving 17 beds."

In its ruling, the CONRB found that "HealthSouth's proposed project" complied with all the applicable CON criteria. In

explaining how the application for the relocation-bed CON was consistent with the SHP, the CONRB took the view that it was simply being asked to decide whether to allow the relocation of beds into a proposed facility that had already been approved:

"HealthSouth's reference in its application to plans to acquire an additional seventeen beds (subject to separate SHPDA approval) for utilization in the same proposed facility does not render the present application fatally inconsistent with the SHP in effect at the time of its filing. HealthSouth duly obtained CON authority for such additional beds in a separate CON proceeding ... in which a Shelby Ridge affiliate was a competing applicant. Nothing in the SHPDA statutes, SHP or other SHPDA Rules requires that beds proposed to be relocated be part of an operating facility (as opposed to one that has just closed), or that the facility where the beds are to be relocated already be approved, constructed and/or in operation. HealthSouth has appropriately sought and obtained approval for the proposed new location of the beds."

We note that, at the time the trial court affirmed the CONRB's grant of the relocation-bed CON to relocate the Carraway beds, it had already reversed the CONRB's grant of a CON to HealthSouth for the SHP-adjustment beds. Because in this opinion we are affirming the trial court's reversal of CONRB's decision and are holding that the CONRB erred in its decision to grant the CON to HealthSouth for the SHP-adjustment beds, we must also hold that the trial court's reliance on that previous CON approval to affirm the CONRB's issuance of the relocation-bed CON to relocate the Carraway beds was also in error. The decision to grant the relocation-bed CON, therefore, is left without a basis to explain the gap between the number of beds permitted in the CON and the number of beds supported by the evidence. "When reviewing the decision of an administrative agency, ... an Alabama court will affirm only if the action and the stated basis for the action are correct." *Ex parte Beverly Enters. Alabama, Inc.,* 812 So.2d 1189, 1195 (Ala.2001). Accordingly, we reverse the trial court's judgment affirming the CONRB's issuance of a 17–bed CON to HealthSouth for the relocation of the Carraway beds, which judgment has been challenged in appeal no. 2130628.

We recognize that, in the consolidated record before us, the CONRB did grant both the CON for HealthSouth to relocate the Carraway beds and the CON for the SHP-adjustment beds. If we were to take the view that the CONRB's approval of HealthSouth's application for the relocation-bed CON somehow cured the evidentiary defects in the prior approval of the SHP-adjustment-bed CON, we would be construing the applications as if the proposal all along had been to build a 34–bed facility containing the 17 Carraway beds and the 17 SHP-adjustment beds. However, at the time the first CON application, which sought authorization to relocate the Carraway beds, was submitted, SHCC had not yet adjusted the SHP to add the 17 beds to Shelby County. Therefore, conflating the CON applications would be in violation of the statutory prohibition against inconsistency with the SHP. *See, e.g., Nursing Home of Dothan, Inc. v. Alabama State Health Planning & Dev. Agency,* 542 So.2d 935, 939 (Ala.Civ.App. 1988) (affirming denial of CON application on grounds of inconsistency with the SHP at the time the application was received). We can find no statutory or regulatory authority that would permit us to consider subsequent events when evaluating CONRB's decisions regarding these sepa-

rate CON applications. We pretermit consideration of the other issues raised on appeal in regard to the issuance of the relocation-bed CON.

HealthSouth asserts several reasons for the approach it took in seeking authorization for its proposed facility. HealthSouth maintains that it did not want the CON it already had for the Carraway beds to elapse, that it was uncertain whether the SHCC would adjust the SHP to add 34 beds to Shelby County, and that it wanted to avoid competition from other providers for a 34–bed facility in Shelby County. In addition, HealthSouth took the following position in the hearing before the CONRB regarding its CON application for relocating the Carraway beds:

> "HealthSouth is perfectly willing to say we're going to invest this money in this facility and put it up against what's best for the patient. If the need is not there, we're wrong. We've wasted it. We're saying based on our expertise, the greatest in the country based on number of facilities and success, there is a need for at least 34 with the two clinical programs that we've outlined."

Our legislature has mandated that the task of determining the need for new health-care services belongs to SHPDA, with the goal of fostering cost containment. Although HealthSouth may have had valid reasons for submitting two separate CON applications, and no criticism is directed to that approach, as long as the legislature's statutory framework requires that a CON-review process is required to construct and operate new health-care facilities, the applicable statutes and administrative rules must be followed and applied. We must not substi-

tute our judgment for that of a state agency when it makes a decision that has a factual basis to support it, but we cannot affirm such a decision when there is no evidence to support it. We recognize the CONRB's goal of meeting the demonstrated community need for rehabilitative services in Shelby County, but there was no evidence in the record to support the decision to issue the CON to HealthSouth to operate the 17 SHP-adjustment beds. Consequently, the trial court's reliance on that previous approval to support its judgment upholding the CONRB's decision to grant the relocation-bed CON was also in error.

## II. Shelby Ridge's Request for a Declaratory Ruling

Shelby Ridge raises a number of arguments challenging the trial court's judgment dismissing Shelby Ridge's petition for judicial review of SHPDA's denial of its declaratory-ruling request.[6] For several of its arguments, Shelby Ridge relies on its characterization of the request for a declaratory ruling as a challenge to SHPDA's jurisdiction to review Health-South's application for the relocation-bed CON. Shelby Ridge first argues that the trial court erred in failing to more promptly review Shelby Ridge's request for a declaratory ruling. Shelby Ridge additionally argues that the trial court's delay amounted to a judicial abstention in violation of the separation-of-powers doctrine. The underlying assumption of both of those arguments is that a jurisdiction-based challenge merited a more expedient ruling from the trial court. Shelby Ridge also argues that, as a jurisdiction-based challenge, its complaint should not have been deemed to be moot. Because Shelby

---

**6.** Because Shelby Ridge's claims asserted pursuant to § 41–22–10 and the Declaratory Judgment Act failed to invoke the jurisdiction of the trial court, *see Ex parte RCHP–Florence,*

155 So.3d at 1018, we consider Shelby Ridge's arguments only in regard to the trial court's denial of the request for judicial review.

Ridge's request for a declaratory ruling was based on the assertion that HealthSouth's application for the relocation-bed CON was inconsistent with the SHP, we examine whether a question regarding a CON application's consistency with the SHP raises a jurisdictional question for SHPDA.

For administrative agencies, jurisdiction amounts to the authority to act on a matter. *State Ins. Dep't v. Howell,* 614 So.2d 1053, 1056 (Ala.Civ.App.1992) (citing *Barry v. Pike Cnty. Bd. of Educ.,* 448 So.2d 315 (Ala.1984)) ("In order for an administrative agency to act with authority, its jurisdiction over the matter must first be affirmatively established."). SHPDA obtains its authority from § 22–21–260 et seq., Ala.Code 1975. All entities seeking to furnish or operate a new institutional health service must obtain a CON from SHPDA. § 22–21–265. SHPDA is the sole agency responsible for handling reviews of CON applications. *See* § 22–21–260(14) and § 22–21–264.

Section 22–21–263(a), Ala.Code 1975, provides the scope of SHPDA's review: "All new institutional health services which are subject to this article and which are proposed to be offered or developed within the state shall be subject to review under this article. No institutional health services which are subject to this article shall be permitted which are inconsistent with the [SHP]." Section 22–21–263(a) provides SHPDA with the authority to review all proposed new institutional health services subject to § 22–21–265. *See Prime Lithotripter Operations, Inc. v. LithoMedTech of Alabama, LLC,* 855 So.2d 1085, 1093 (Ala.Civ. App.2001) (holding that SHPDA lacked authority to require a CON review for a matter not subject to § 22–21–263). For those institutional health services subject to SHPDA's review, § 22–21–263(a) pro-

hibits SHPDA from approving CON applications that are inconsistent with the SHP. The prohibition, thus, places a limit on SHPDA's discretion but not on its authority to review the matter altogether. To hold that any limit on SHPDA's authority, whether discretionary or not, involves a jurisdictional question would entail the untenable position that all challenges to SHPDA's decisions are jurisdictional. Shelby Ridge's arguments depend on different consequences for a jurisdictional challenge as opposed to a nonjurisdictional challenge. Collapsing that distinction would render the arguments ineffective.

Furthermore, the consistency of a CON application with the SHP is one of the criteria that § 22–21–264, Ala.Code 1975, requires SHPDA to evaluate:

"The SHPDA, pursuant to the provisions of Section 22–21–274, shall prescribe by rules and regulations the criteria and clarifying definitions for reviews covered by this article. These criteria shall include at least the following:

"(1) Consistency with the appropriate State Health Facility and services plans effective at the time the application was received by the State Agency...."

*See* Rule 410–1–6–.02(1), Ala. Admin. Code (SHPDA)("The proposed new institutional health service shall be consistent with the appropriate state health facility and services plans effective at the time the application was received by the state agency...."); Rule 410–1–6–.05(1)("Determination of a substantially unmet public requirement for the proposed health care facility, service, or capital expenditure shall be made before approval may be granted. The need shall be consistent with orderly planning within the state and community for furnishing comprehensive health care."). As a criterion for evalua-

tion, consistency with the SHP concerns the merits of a CON application.

Shelby Ridge's arguments depend on a recognizable difference between jurisdictional and nonjurisdictional questions. Shelby Ridge applies the principles of jurisdiction in the judicial context by citing *Ex parte Butler*, 972 So.2d 821 (Ala.2007). In that case, our supreme court stated: "Subject-matter jurisdiction concerns a court's power to adjudicate a case, not the merits of the court's decision in the case." *Ex parte Butler*, 972 So.2d at 825. *See also City of Arlington, Texas v. FCC*, —— U.S. ——, ——, 133 S.Ct. 1863, 1869, 185 L.Ed.2d 941 (2013) ("A court's power to decide a case is independent of whether its decision is correct...."). For the purpose of examining Shelby Ridge's arguments, we assume that the jurisdictional principles in the judicial context apply to the present case. Because consistency with the SHP concerns the merits of a CON application, we conclude that Shelby Ridge has not shown that its request for a declaratory ruling raised a jurisdictional question. Therefore, the arguments based on Shelby Ridge's having raised a jurisdictional challenge fail to demonstrate an error by the trial court. We pretermit further discussion of those arguments.

 Shelby Ridge next argues that the trial court erred in ignoring the special master's report. Rule 53(e)(2), Ala. R. Civ. P., provides:

"In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous.... The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

The trial court ruled that the sole remedy to challenge the issuance of a CON is through an appeal and that, because Shel-by Ridge had appealed SHPDA's decision to grant the relocation-bed CON to HealthSouth, the issue of Shelby Ridge's request for a declaratory ruling was moot. A court has no subject-matter jurisdiction over an action that is moot. *Pharmacia Corp. v. Suggs*, 932 So.2d 95, 99 (Ala.2005). "Whether a court has subject-matter jurisdiction is a question of law...." *L.L.M. v. J.M.T.*, 964 So.2d 66, 74 (Ala.Civ.App.2007) (citing *Ex parte Terry*, 957 So.2d 455 (Ala. 2006)). A court lacking subject-matter jurisdiction has no alternative but to dismiss the action. *State v. Prop. at 2018 Rainbow Drive known as Oasis*, 740 So.2d 1025, 1029 (Ala.1999). Accordingly, a finding of mootness deprived the trial court of the authority to act pursuant to Rule 53 in accepting or rejecting the special master's report. As discussed above, Shelby Ridge has not demonstrated an error by the trial court in deeming the action moot. We, therefore, hold that Shelby Ridge's argument fails to show that the trial court violated Rule 53.

 Lastly, Shelby Ridge argues that the trial court erred in denying Shelby Ridge's request for a hearing on its motion to alter, amend, or vacate the trial court's judgment.

"Rule 59(g), Ala. R. Civ. P., provides that posttrial motions 'remain pending until ruled upon by the court (subject to the provisions of Rule 59.1), but shall not be ruled upon until the parties have had opportunity to be heard thereon.' '[I]f a party requests a hearing on its motions for a new trial, the court must grant the request.' *Ex parte Evans*, 875 So.2d 297, 299–300 (Ala.2003) (citing Rule 59(g), Ala. R. Civ. P., and *Walls v. Bank of Prattville*, 554 So.2d 381, 382 (Ala. 1989)). Although it is error for the trial court not to grant such a hearing, this

error is not necessarily reversible error. 'This Court has established, however, that the denial of a postjudgment motion without a hearing thereon is harmless error, where (1) there is . . . no probable merit in the grounds asserted in the motion, or (2) the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.' *Historic Blakely Auth. v. Williams,* 675 So.2d 350, 352 (Ala.1995) (citing *Greene v. Thompson,* 554 So.2d 376 (Ala.1989))."

*Chism v. Jefferson Cnty.,* 954 So.2d 1058, 1086 (Ala.2006). We have resolved the dispositive issues adversely to Shelby Ridge pursuant to the de novo standard of review applicable to questions on matters of law. Accordingly, any error by the trial court in failing to hold a hearing on Shelby Ridge's postjudgment motion was harmless. We therefore affirm the trial court's judgment challenged in appeal no. 2130515.

*Conclusion*

For the reasons stated, we affirm the trial court's judgment regarding the denial of Shelby Ridge's request for a declaratory ruling (appeal no. 2130515). We affirm the trial court's judgment ordering CONRB to deny the SHP-adjustment-bed CON to HealthSouth, but we reverse the judgment ordering CONRB to grant the SHP-adjustment-bed CON to Shelby Ridge (appeal nos. 2120872 and 2120907). We reverse the trial court's judgment affirming CONRB's grant of the relocation-bed CON to HealthSouth (appeal no. 2130628). We remand the pertinent causes to the trial court for further proceedings consistent with this opinion.

2120872 and 2120907—AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

PITTMAN and MOORE, JJ., concur.

THOMAS, J., concurs specially.

THOMPSON, P.J., concurs in part and dissents in part, with writing.

2130515—AFFIRMED.

THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.

THOMAS, J., concurs specially.

2130628—REVERSED AND REMANDED.

PITTMAN and MOORE, JJ., concur.

THOMAS, J., concurs specially.

THOMPSON, P.J., dissents, with writing.

THOMAS, Judge, concurring specially.

I concur in the main opinion; however, I write specially to urge the legislature to consider repealing the legislation creating the State Health Planning and Development Agency ("the SHPDA") and requiring health-care institutions to seek certificates of need ("CONs"). As this case, and many others, illustrate, the SHPDA and the CON system utterly fail to ensure that the State Health Plan meets its goal of "provid[ing] for the development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, *at reasonable costs,* for all residents of the state." Ala.Code 1975, § 22-21-260(13) (defining "state health plan") (emphasis added). Instead, compet-

ing applicants for CONs spend years battling in the court system, which prevents the provision of needed services and, most assuredly, increases the overall cost of health services to fund the protracted legal battles.[7] Allowing free-enterprise competition to control the decisions of the health-care providers to build facilities and add additional health services will, in my opinion, prevent such a huge waste of time and resources and will, in the end, result in the provision of quality health services at the price the market will bear as determined by the health-care consumer.

THOMPSON, Presiding Judge, concurring in appeal no. 2130515; concurring in part and dissenting in part in appeal nos. 2120872 and 2120907; and dissenting in appeal no. 2130628.

I respectfully dissent to that portion of the main opinion affirming the judgment of the Montgomery Circuit Court ("the circuit court") that reversed the decision of the State Health Planning and Development Agency ("SHPDA") granting HealthSouth of Alabama, LLC ("HealthSouth"), a certificate of need ("CON") for 17 "adjustment beds" (appeal nos. 2120872 and 2120907). I also respectfully dissent to that portion of the main opinion reversing the circuit court's judgment affirming SHPDA's decision to grant HealthSouth a CON for 17 "relocation beds" (appeal no. 2130628). I concur with the remainder of the main opinion.

As the main opinion points out, SHPDA is tasked with determining the appropriateness of new health-care facilities throughout the state. Through the proper process, the State Health Plan ("SHP") was revised to allow the region that in-

cludes Jefferson and Shelby Counties an additional 17 inpatient physical-rehabilitation beds ("the adjustment beds"). HealthSouth sought to acquire the new adjustment beds for a facility it proposed to build in Shelby County and to add those to the 17 additional beds it had already acquired from a hospital in Jefferson County that had ceased operations in October 2008. To accomplish its plan of operating a new 34–bed facility in Shelby County, HealthSouth had to obtain CONs both to relocate the beds it had already acquired and to obtain the adjustment beds. In 2009, as part of its application for a CON to move the relocation beds, HealthSouth explained to SHPDA its overall plan and mentioned the need for a separate CON filing if the CON for the relocation beds was approved.

The main opinion concludes that the decision to grant HealthSouth the 17 adjustment beds in light of evidence that operating a 17–bed facility was not economically feasible could not reasonably support SHPDA's decision to grant HealthSouth the CON for the adjustment beds. The main opinion then concludes that the circuit court's reliance on the adjustment-bed CON in granting the relocation-bed CON was misplaced because the circuit court had already reversed SHPDA's decision granting the adjustment-bed CON. Therefore, the main opinion concludes, SHPDA's decision to grant HealthSouth the CON for the relocation beds was improper.

I believe that the approach taken by the main opinion creates a Catch–22 situation for HealthSouth and SHPDA. As a practical matter, HealthSouth had to be granted one or the other of the 17–bed CONs first, and both are required for Health-

---

7. In this case, for example, the original CON application was filed in October 2009, nearly *six years* before the issuance of this court's opinion in the matter.

South to be able to construct and operate an economically feasible 34–bed facility. Under the main opinion's rationale, however, neither the relocation-bed CON nor the adjustment-bed CON would, by itself, be justifiable without the other. Thus, the community that HealthSouth seeks to serve with a new facility, first proposed in 2009, is left with no inpatient physical-rehabilitation beds.

SHPDA, the agency entrusted with regulating the construction of new health-care facilities, was aware of HealthSouth's overall plan and its proposal to seek two CONs when it granted HealthSouth the CONs. The total number of beds granted to HealthSouth, which will enable it to operate a 34–bed facility in Shelby County, fits within the SHP.

"The scope of judicial review of an order issued by SHPDA awarding a CON is provided in § 41–22–20(k), Ala.Code 1975:

" 'Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petition-er have been prejudiced because the agency action is any one or more of the following:

" '(1) In violation of constitutional or statutory provisions;

" '(2) In excess of the statutory authority of the agency;

" '(3) In violation of any pertinent agency rule;

" '(4) Made upon unlawful procedure;

" '(5) Affected by other error of law;

" '(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

" '(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.' "

*Affinity Hosp., LLC v. Brookwood Health Servs., Inc.,* 143 So.3d 208, 212 (Ala.Civ. App.2013).

"[I] ... reiterate that the circuit court 'was in no better position to review [SHPDA's] decision than this court,' that '[t]he weight or importance assigned to any given piece of evidence presented in a CON application is left primarily to the [Certificate of Need Review Board]'s discretion, in light of the [Certificate of Need Review Board]'s recognized expertise in dealing with these specialized areas,' that a reviewing court is not to 'substitute its judgment for that of the administrative agency,' and that that principle applies 'even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.' *Colonial [Mgmt. Grp., L.P. v. State Health Planning & Dev. Agency ]*, 853

So.2d [972] at 974, 975 [ (Ala.Civ.App. 2002) ]."

*Ace Home Health Care, LLC v. Gentiva Health Servs., Inc.,* 162 So.3d 931, 939 (Ala.Civ.App.2014).

The circumstances presented in this case are rare if not completely unique. SHPDA, HealthSouth, and interested parties such as Shelby Ridge Acquisition Corporation d/b/a Shelby Ridge Rehabilitation Hospital all were aware of HealthSouth's desire to operate a 34–bed facility, and all knew where the beds had to come from to enable the facility to have its full complement of beds. No one was deprived of an opportunity to challenge HealthSouth's overall plan, which was necessarily pieced together by obtaining from SHPDA the required CONs to relocate the existing beds and to add the new "adjustment beds" to the proposed facility.

Because of the especially complex circumstances in this case, I would defer to the expertise of SHPDA and to the decisions it made regarding the granting or denial of the CONs. Therefore, I believe that the circuit court should have affirmed each of SHPDA's decisions relating to the granting or denial of the CONs at issue, and I would affirm or reverse the circuit court's judgments accordingly.

For the reasons set forth above, I concur in part and dissent in part in appeal nos. 2120872 and 2120907; I concur in appeal no. 2130515, and I dissent in appeal no. 2130628.